508 P.2d 773

George SAVARD and Jeanne Savard, husband and wife, Appellants,

v.

Gordon SELBY, Carliflo McCormack, Bobby Manning, Jack Dunn, Nathan Holt, Patrick Eldridge, American States Insurance Company and the State of Arizona, Appellees.

No. 1 CA–CIV 1887.

Court of Appeals of Arizona,
Division 1,
Department A.

April 10, 1973.

Atmore L. Baggot, Phoenix, for appellants.

Lurie & Friedman by Stéven M. Friedman, Phoenix, for appellee McCormack.

Streich, Lang, Weeks, Cardon & French, by William P. French, Phoenix, for appellee American States Ins. Co.

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, by Jolyon Grant and Robert G. Beshears, Phoenix, for appellees Selby, Manning, Dunn and State of Arizona.

Gust, Rosenfeld & Divelbess by Richard A. Segal, Phoenix, for appellees Eldridge and Holt.

DONOFRIO, Presiding Judge.

This appeal is principally from the trial court's order granting separate motions to dismiss plaintiffs-appellants' complaint for failure to state a claim for relief.

The crucial question for determination is whether the plaintiffs have stated a claim for relief in their complaint. In deciding that plaintiffs have not stated a claim for relief, we need not determine the other issues raised.

In considering whether a motion to dismiss for failure to state a claim upon which relief was properly granted, the Court of Appeals presumes that the facts alleged in the complaint are true. 16 A.R.S., Rules of Civil Procedure, Rule 12(b). The recognized test to be applied in resolving the question of whether the complaint sets forth facts showing that plaintiffs are entitled to relief under any theory of law is whether the complaint, taken in the light most favorable to plaintiffs, is sufficient to constitute a valid claim. Veach v. City of Phoenix, 102 Ariz. 195, 427 P.2d 335 (1967).

Considering the facts in the light most favorable to plaintiffs, the facts are as follows: The plaintiffs (Savards) were the sole directors, officers and stockholders of a corporation called Lake Havasu Sportman's Club, Inc. That corporation owned a resort located at Parker Dam, Yuma County, Arizona, known as the Havasu Springs Resort. At the time the complaint was filed, defendant Carliflo McCormack operated a resort at Parker Dam known as the Polynesian Village. Defendants Gordon Selby, Jack Dunn and Bobby Manning were employed by the State of Arizona and were the Assistant Supervisor and agents, respectively, of the Department of Liquor Control. Defendants Nathan Holt and Patrick Eldridge were attorneys licensed to practice law in Arizona, and defendant American States Insurance Company was the insurer for the plaintiffs and Lake Havasu Sportman's Club, Inc.

In March 1967, the Savards lodged a complaint with the Department of Liquor Control, claiming that certain purported improprieties were taking place at the Polynesian Village. Shortly thereafter, defendants Manning and Dunn were sent by Selby to plaintiff's place of business, requesting further information with regard

to the happenings at defendant McCormack's establishment.

In June 1967, McCormack filed suit for defamation by slander against the Savards for damages in the amount of $250,000. The Savards placed defense of this suit with the defendant American States Insurance Company and with defendant Nathan Holt, who was counsel for the insurer.

In December 1967, defendant Selby also filed suit in defamation against the Savards in the amount of $250,000. No other details are available as to this suit except that it was also assigned to American States and Holt.

Shortly after this latter suit was filed, the Savards retained defendant Patrick Eldridge to represent them in the defense of these suits for possible damages over and above the policy limits. After investigation and discovery, the defendant carrier settled the complaints for the full amount of the insurance coverage as permitted by the policy provisions. See infra.

Some time during the period of January 1968 through June 1968, the plaintiffs sold the Havasu Springs Resort, allegedly at a loss.

The plaintiffs made the following allegations in addition to the above facts: They claimed that the original complaint of improprieties had been taped by an agent of the Department of Liquor Control and that both the tape and the subsequent information received by the agents had been wrongfully turned over to the attorney for defendant McCormack, under the direction of defendant Gordon Selby. They alleged that both Holt and Eldridge took the information they had acquired from the plaintiffs and gave it to the counsel for McCormack so that it could be used against plaintiffs. They claimed that the aforementioned parties wrongfully settled the defamation suits for the full amount of the insurance coverage, to plaintiffs' detriment. They further alleged that Selby, Manning and Dunn, as agents for the State of Arizona, harassed and intimidated the plaintiffs, ultimately forcing them to sell their

business. The plaintiffs concluded that all of the aforestated matters established a claim for relief for a civil conspiracy to destroy plaintiffs' business.

Separate counsel for the respective defendants timely moved to dismiss the complaint for failure to state a claim and, in the alternative, that the time for bringing the suit had lapsed. Plaintiffs choose to stand on their pleadings. The trial court granted the defendants' motions.

Plaintiffs' contention on appeal is that there is a claim for relief in tort for civil conspiracy and that it is a legally sufficient and "recognizable claim for relief in Arizona." They cite numerous authorities which they argue are in support of their position.

In 15A C.J.S. Conspiracy § 3, p. 603, the general rule as to stating a claim for relief in civil conspiracy is as follows:

"To constitute a civil conspiracy *there must be an object to be accomplished, and the purpose to be effected must be unlawful in its nature or in the means to be employed for its accomplishment.* * * * The purpose of the conspiracy is to be determined ordinarily by the quality of the acts to be performed under it." (Emphasis supplied.)

The United States Supreme Court, in the early case of Truax v. Corrigan, 257 U.S. 312, 42 S.Ct. 124, 66 L.Ed. 254 (1921), espoused the same position.

In 15A C.J.S. Conspiracy § 6, pp. 608–609 is the following statement:

" * * * *Civil liability rests on different grounds, however, and, unless actual damage has resulted from something done by one or more of the conspirators in furtherance of the object of the conspiracy, no civil action lies against anyone*; but, if a conspiracy is conceived and executed, and a private injury results, the one so injured has a right of action against the conspirators." (Emphasis supplied.)

See also, Unruh v. Truck Insurance Exchange, 7 Cal.3d 616, 102 Cal.Rptr. 815, 498 P.2d 1063 (1972).

15A C.J.S. Conspiracy § 3, pp. 603–605, continues:

> "*Where the object in view is lawful and no unlawful means are used, there can be no civil action for conspiracy, and the courts have held this to be the case even though damage results and even though defendants acted with malicious motives.* * * *" (Emphasis supplied.)

The Arizona Supreme Court has held on several occasions that there is no claim for relief for civil conspiracy in and of itself, but that the action is one for damages arising out of the acts committed pursuant to the conspiracy. Tovrea Land and Cattle Company v. Linsenmeyer, 100 Ariz. 107, 412 P.2d 47 (1966); Consolidated Tungsten Mines, Inc. v. Frazier, 87 Ariz. 128, 348 P.2d 734 (1960); Hale v. Brown, 84 Ariz. 61, 323 P.2d 955 (1958).

This Court in Uvodich v. Arizona Board of Regents, 9 Ariz.App. 400, 453 P.2d 229 (1969), has specifically held that a requisite of an actionable conspiracy is that there be " * * * an unlawful purpose or an unlawful means to accomplish such purpose, * * *"

In all the authority cited by the plaintiffs, the requisite "ingredient" of lawful means to accomplish an unlawful object, or unlawful means to accomplish a lawful object was present, e. g., to perpetrate a fraud by depressing the value of stock, Hidalgo v. McCauley, 50 Ariz. 178, 70 P.2d 443 (1937), to defraud innocent purchasers of insurance policies by misfeasance and nonfeasance by members of the Corporation Commission, Bankhead v. Howe, 56 Ariz. 257, 107 P.2d 198 (1940), or to conspire to slander, Horn v. Ruess, 72 Ariz. 132, 231 P.2d 756 (1951).

■ More specifically, it is recognized that there could be a good claim for relief stated where it is based on a claim for damages resulting from a conspiracy to unlawfully destroy or injure the plaintiffs' business. 16 Am.Jur.2d Conspiracy § 53, p. 154.

■■ The question we must resolve at this point is whether such a conspiracy can be either lawful means to accomplish an unlawful purpose, or to use unlawful means to accomplish a lawful purpose, or both. Arizona case law is not clear as to how to allege a claim for relief for civil conspiracy to injure one's business. We cite with approval the reasoning of the Illinois Court of Appeals in De L'Ogier Park Dev. Corp. v. First Fed. S. & L. Ass'n, 6 Ill.App.3d 807, 286 N.E.2d 583 (1972), that forcing one out of business is not unlawful per se and that an alleged conspiracy to do same is not a conspiracy to accomplish an unlawful purpose, since a plaintiff can be forced out of business by the legitimate practices of his competitors. The court in De L'Ogier, supra, summarized the more extensive Illinois case law on the subject and reiterated the principle in that jurisdiction that a claim for relief for conspiracy to injure or destroy a business will be sustained only "where *the acts* in furtherance of the business-destroying goal are unlawful" (emphasis added). In the instant case we agree with that Court's reasoning. Therefore, in order to find that a good claim for relief was stated in the case *sub judice* we must find present the requisite *unlawful acts or means* to accomplish the object of forcing plaintiffs out of business.

The focal points of plaintiffs' theory in their complaint appear to be the settlement of the defamation suits and the selling of the resort. Plaintiffs claimed that the actions of American States and defendants Holt and Eldridge in settling the defamation suits for the policy limits somehow worked an injustice toward them. We refer to a respected authority in the field of insurance law for the principle that:

> "Liability insurance contracts have been held to give the insurer *absolute authority* to settle claims within the policy limits, and the insured has no power either to compel the insurer to make such settlements, or to prevent it from doing so." (Emphasis added.) Appleman, 7A Insurance Law & Practice § 4711, p. 556 (1962).

The insuring agreement between American States and the appellants contained the following provision:

"I. Personal Injury Liability Coverage: To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury sustained by any person or organization and arising out of the following hazards in the conduct of the named insured's business designated in the policy, and the company shall defend any suit against the insured alleging such injury and seeking damages which are payable under the terms of this endorsement, even if any of the allegations of the suit are groundless, false or fraudulent; *but the company may make such investigation and settlement of any claim or suit as it deems expedient*: * * * Hazard B—libel, slander or defamation of character * * *." (Emphasis added.)

The court in McChristian v. State Farm Mutual Automobile Ins. Co., 304 F.Supp. 748 (D.C.Ark. 1969), in construing a provision remarkably similar to the above, stated as follows:

"By virtue of the quoted provision, the absolute control of the defense of such actions is turned over to the insurer, and the insured is excluded from any interference in settlement negotiations. It is generally understood that these are rights necessary for the insurer to have in order to justify or enable it to assume the obligations which it does under the contract." 304 F.Supp. at 750.

■■ We agree with the well-reasoned opinion of the Nebraska Supreme Court in Olson v. Union Fire Insurance Company, 174 Neb. 375, 118 N.W.2d 318 (1962), that:

"The amount of liability fixed by the insurance policy, upon which the premium is paid, determines the limit of the contractural liability and duty of the insurer. *An insurer may settle a claim within its limit of liability as it chooses since the insured cannot be injured by a settlement to be wholly paid by the insurer. The exclusive power to settle a claim within the limits of its liability is therefore ceded to the insurer for its sole benefit.*" (Emphasis added.) 118 N.W.2d at 321.

■■ American States was legally empowered to settle the suits. Even assuming that defendant's actions somehow worked to the plaintiffs' detriment, there was a lawful object in view and no unlawful means were utilized, therefore no claim for relief as to that defendant was stated. See 15A C.J.S. Conspiracy § 3, supra.

■ As to defendants Holt and Eldridge, plaintiffs insinuate some kind of legal malpractice by a breach of confidence. However, they failed to allege that any sort of confidential relationship existed in the first instance, and more importantly, they failed to allege the kind of information purportedly given to counsel for McCormack. The information could have been transmitted in pursuance of an attempt to settle the suits, or for other legitimate ends. Because of the ambiguousness of its terms, and because it failed to allege an unlawful means used to accomplish the aforesaid purpose, the complaint, on its face, does not state a claim for relief against Holt and Eldridge. In addition, the complaint fails to allege anything against defendant McCormack aside from the fact that she was the plaintiff in one of the earlier defamation suits.

■ As to the second major "element", i. e., the sale of the resort at a loss, plaintiffs' allegation that Selby, Dunn and Manning used their official offices to intimidate and harass the plaintiffs is too vague on its face to allege any liability to them in their individual capacities.

Aside from the allegations above mentioned, the plaintiffs make a general characterization that the defendants' alleged acts were "wrongfully and maliciously" perpetrated. Even though taken as true, these allegations fail to add anything to the previously discussed acts.

 

In summation, we hold that since plaintiffs' complaint failed to demonstrate the fundamental requisite of unlawful acts or means, it failed to state a claim for relief.

Affirmed.

OGG and STEVENS, JJ., concur.