593 P.2d 671

**Dorothy Ann KECK, Appellant,**

v.

**Douglas C. JACKSON and Martha F. Jackson, his wife, Appellees.**

**No. 1 CA–CIV 3303.**

Court of Appeals of Arizona,
Division 1,
Department A.

March 9, 1978.

Rehearing Denied April 18, 1978.

Review Granted May 9, 1978.

**118**

George Zelma and Napier & Jones by George Zelma, Phoenix, for appellant.

Robbins, Green, O'Grady & Abbuhl, P. A. by Philip A. Robbins and Timothy C. Gerking, Phoenix, for appellees.

## OPINION

DONOFRIO, Judge.

Plaintiff/appellant, Dorothy Ann Keck, appeals from a final order of the Coconino Superior Court dated August 25, 1975, which granted defendants'/appellees' motion to dismiss Count One of her complaint. The portion of appellant's complaint which has been dismissed reads:

> "Prior to the events aforementioned and during the prolonged and futile agonizing battle for life which MRS. GILLESPIE underwent the Plaintiff DOROTHY ANN KECK had been a very close and loving daughter. Further, Plaintiff has been caused to suffer severe emotional and physical distress, sorrow, mental suffering, pain, shock, anxiety and anguish because of the aforementioned injuries to her mother and being present during her mother's battle for life all to her damage."

The Superior Court in its order to dismiss found that Arizona law does not, at this time, impose liability upon a defendant for shock and mental anguish of a plaintiff resulting from the observation of the injuries, the pain, and the suffering of a close family member, even though the plaintiff incurred physical injuries in the same impact. The court further stated that the lengthy time period involved in the death of the appellant's mother was not determinative in the granting of the motion to dismiss.

The appellant presents us with the following single issue here on appeal:

Whether or not appellant may recover money damages for emotional and physical distress and mental anguish sustained from witnessing the pain and suffering of appellant's mother who was injured as a result of defendant's negligence when appellant was injured physically at the same time by the same negligent act of appellee.

In considering whether a motion to dismiss for failure of state a claim upon which relief can be granted was properly sustained, the Court of Appeals presumes that facts alleged in the complaint are true. *Savard v. Selby,* 19 Ariz.App. 514, 508 P.2d 773 (1973); *Ulan v. Lucas,* 18 Ariz.App. 129, 500 P.2d 914 (1972). The facts which formulate the action in the trial court and now here on appeal are below set forth:

Appellant was a passenger in a stationary vehicle which was situated in the eastbound emergency parking lane of Interstate 40 approximately twenty miles east of Flagstaff, Coconino County, Arizona. The car, in which appellant was a passenger, was parked in the emergency lane in order that a flat tire could be changed.

At the same time, appellee, Martha F. Jackson, was proceeding eastbound on the same interstate highway. Appellants alleged that appellee, while under the influence of alcohol, was negligently driving her automobile within the emergency parking lane; did not see the stationary vehicle or its warning signals; and caused the impact between her car and the car in which appellant was a passenger.

Appellant received serious physical injuries from the resulting impact. Appellant's mother, also a passenger in the same car as appellant, received fatal injuries and expired three months after the impact.

Appellant alleges that the observations and sensations she experienced due to her mother's serious condition caused her obvious mental suffering with physical manifestations.

As the trial court judge noted in her order to dismiss, the issue presented by appellant's Count I is an issue of first impression in Arizona. Thus, this Court has two avenues of approach it may take on this appeal. We may either deny relief to appellant thus maintaining the status quo in Arizona, or we may look to our sister states for guidance in granting appellant relief. The progressiveness of our sister states encourages us to choose the latter approach.[1]

California, in *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968), was the first jurisdiction to allow recovery to a mother who suffered emotional trauma and physical injury from witnessing the infliction of death upon her child due to the negligence of a tort-feasor without the requirement of a simultaneous impact to the mother. The *Dillon* Court recognized that past decisions have barred such recovery on the ground that there was an absence of the required duty of due care by the tort-feasor to the mother, and that the imposition of such duty would work a disaster because it would invite fraudulent claims and involve the courts in the hopeless task of defining the extent of the tort-feasor's liability. The *Dillon* Court artfully summarized these past decisions when it said, "In substance, they [past decisions] say, definition of liability being impossible, denial of liability is the only realistic alternative."

Past California decisions have addressed themselves to this very problem. In *Emery v. Emery*, 45 Cal.2d 421, 289 P.2d 218 (1955), the California Supreme Court said:

"* * * [T]he fact that there may be greater opportunity for fraud or collusion in one class of cases than another does not warrant courts of law in closing the door to all cases of that class. Courts must depend upon the efficacy of the judicial processes to ferret out the meritorious from the fraudulent in particular cases." 45 Cal.2d at 431, 289 P.2d at 225.

*Dillon,* supra, has expounded upon this theory when it stated:

"Indubitably juries and trial courts, constantly called upon to distinguish the frivolous from the substantial and the fraudulent from the meritorious, reach some erroneous results. But such fallibility, inherent in the judicial process, offers no reason for substituting for the case-by-case resolution of causes an artificial and indefensible barrier. Courts not only compromise their basic responsibility to decide the merits of each case individually but destroy the public's confidence in them by using the broad broom of 'administrative convenience' to sweep away a class of claims a number of which are admittedly meritorious. The mere assertion that fraud is possible, 'a possibility [that] exists to some degree in all cases' (Citation omitted), does not prove a present necessity to abandon the neutral principles of foreseeability, proximate cause and consequential injury that generally govern tort law.

Indeed, we doubt that the problem of the fraudulent claim is substantially more pronounced in the case of a mother claiming physical injury resulting from seeing her child killed than in other areas of tort law in which the right to recover damages is well established in California. For example, a plaintiff claiming that fear for his own safety resulted in physical injury makes out a well recognized case for recovery. (Footnote and Citations Omitted).

\* \* \* \* \* \*

---

1. For a detailed history and summary of the area of negligent infliction of mental distress injuries see: *Dillon v. Legg,* 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968); *Hunsley v. Giard,* 87 Wash.2d 424, 553 P.2d 1096 (1976); *Torts-Damages-Right To Recover For Mental Distress And Its Physical Consequences Where There Has Been No Impact,* McCall, Jacke, 8 Ariz.Law Review 181 (1966); *Negligently In-* *flicted Emotional Shock From Witnessing The Death Or Injury Of Another,* Smith Les.J. 10 Ariz.Law Review 509 (1968); *Fear for Another: Psychological Theory And The Right To Recover,* 1969 Ariz.St.Law Journal 420;

Two Arizona cases investigated were *Savage v. Bois,* 77 Ariz. 355, 272 P.2d 349 (1954), and *Valley National Bank v. Brown,* 110 Ariz. 260, 517 P.2d 1256 (1974).

In sum, the application of tort law can never be a matter of mathematical precision. In terms of characterizing conduct as tortious and matching a money award to the injury suffered as well as in fixing the extent of injury, the process cannot be perfect. Undoubtedly, ever since the ancient case of the tavern-keeper's wife who successfully avoided the hatchet cast by an irate customer (I de S et ux v. W de S, Y.B. 22 Edw. iii, f. 99, pl. 60 (1348)), defendants have argued that plaintiffs' claims of injury from emotional trauma might well be fraudulent. Yet we cannot let the difficulties of adjudication frustrate the principle that there be a remedy for every substantial wrong." 68 Cal.2d 728, 69 Cal.Rptr. at 78–79, 441 P.2d at 918–9.

*Dillon,* supra, first analyzed the fallacy of the zone-of-danger rule, especially in light of the fact that California had previously rejected the impact rule in *Cook v. Maier,* 33 Cal.App.2d 581, 92 P.2d 434 (1939). The Court concluded that the *Dillon,* supra, facts expose the hopeless artificiality of the zone-of-danger rule, and for this reason this concept must collapse because the requirement of presence in that zone lies in the fact that one within it will fear the danger of impact.

*Dillon,* supra, then analyzed the concept of duty which has, also, furnished a ground to reject such claims as presented in the past. The Court points out that the concept of duty is not an old, nor deep-rooted, doctrine, but that it is a legal device created in the latter half of the 19th century to curtail the feared propensities of juries toward liberal awards.

Finally, the *Dillon* court analyzed the concept of foreseeability, and derived three questions that must be answered in determining defendant's liability. These questions and the Court's reasoning which we choose to adopt, insofar as applicable, are set forth in the following excerpts from the opinion:

"We note, first, that we deal here with a case in which plaintiff suffered a shock which resulted in physical injury and we confine our ruling to that case. In determining, in such a case, whether defendant should reasonably foresee the injury to plaintiff, or, in other terminology, whether defendant owes plaintiff a duty of due care, the courts will take into account such factors as the following: (1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it. (2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence. (3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship. The evaluation of these factors will indicate the degree of the defendant's foreseeability: obviously defendant is more likely to foresee that a mother who observes an accident affecting her child will suffer harm than to foretell that a stranger witness will do so. Similarly, the degree of foreseeability of the third person's injury is far greater in the case of his contemporaneous observance of the accident than that in which he subsequently learns of it. The defendant is more likely to foresee that shock to the nearby, witnessing mother will cause physical harm than to anticipate that someone distant from the accident will suffer more than a temporary emotional reaction. All these elements, of course, shade into each other; the fixing of obligation, intimately tied into the facts, depends upon each case." 69 Cal.Rptr. at 80–81, 441 P.2d at 920, 921.

The Court continued:

"In light of these factors the court will determine whether the accident and harm was reasonably foreseeable. Such reasonable foreseeability does not turn on whether the particular defendant as an individual would have in actuality foreseen the exact accident and loss; it contemplates that courts, on a case-to-case basis, analyzing all the circumstances,

will decide what the ordinary man under such circumstances should reasonably have foreseen. The courts thus mark out the areas of liability, excluding the remote and unexpected." 69 Cal.Rptr. at 81, 441 P.2d at 921.

*Dillon* emphasized that there is no reason why the general rules of tort law, including the concepts of negligence, foreseeability, and proximate cause, should not govern in a negligent infliction of emotional distress for a third person cause of action, as they have long been applied to all other types of tort causes.

The *Dillon* Court summarized their holding as follows:

"We have explained that recovery here will not expose the courts to false claims or a flood of litigation. The test that we have set forth will aid in the proper resolution of future cases. Indeed, the general principles of tort law are acknowledged to work successfully in all other cases of emotional trauma.

Yet for some artificial reason this delimitation of liability is alleged to be unworkable in the most egregious case of them all: the mother's emotional trauma at the witnessed death of her child. If we stop at this point, however, we must necessarily question and reject not merely recovery here, but the viability of the judicial process for ascertaining liability for tortious conduct itself.

＊　＊　＊　＊　＊　＊

To deny recovery would be to chain this state to an outmoded rule of the 19th century which can claim no current credence. No good reason compels our captivity to an indefensible orthodoxy." 69 Cal.Rptr. at 85, 441 P.2d at 925.

The California Court of Appeals for the Fourth District in the case of *Archibald v. Braverman,* 275 Cal.App.2d 253, 79 Cal. Rptr. 723 (1969), followed *Dillon* in holding that a mother who did not actually witness the explosion, but who appeared on the scene within moments thereafter and who, upon observing her son's injuries, suffered shock and mental illness which required institutionalization would be entitled to re-

cover for such mental and emotional illness if negligence on the part of defendant was proved. The California Supreme Court denied review of this case.

In *Jansen v. Children's Hospital Medical Center of the East Bay,* 31 Cal.App.3d 22, 106 Cal.Rptr. 883 (1973), the Court of Appeals for the First District, review by the California Supreme Court denied, held that a mother, who alleged that the hospital negligently diagnosed and treated her 5-year old daughter, which resulted in the daughter's death could not recover for emotional trauma caused by witnessing the daughter's progressive decline and ultimate death. The Court stood on the premises that the guidelines set up in *Dillon,* supra, contemplate a sudden and brief event causing the child's injury and the need that the event causing injury to the victim must itself be one which can be the subject of sensory perception. Failure of diagnosis is not an event which can itself be perceived by laymen, in fact, it occurs only when the expert fails of perception.

The California Court of Appeals for the Second District in *Mobaldi v. Board of Regents of University of California,* 55 Cal. App.3d 573, 127 Cal.Rptr. 720 (1976), held that if amended to assert that the wife and child held themselves out to the public as mother and child, treated each other as such and were treated as such by the tort-feasor, the complaint would state a cause of action to recover for results of emotional distress negligently inflicted without accompanying physical trauma when it alleged that the foster mother was holding the foster child in her arms while he was injected with an unsafe solution and that within a short while he became spastic and convulsive, and finally comatose with resultant permanent brain damage, and that as a result of witnessing the incident the foster mother became severely depressed, lost weight and was required to undergo psychiatric treatment. The Court concluded that where, "the plaintiff perceives by sight and hearing the physical injury to another in her presence caused by the defendant's negligence, the guideline require-

ment of direct emotional impact from sensory and contemporaneous observation of the accident is satisfied, although the plaintiff may not be aware of the precise nature of the negligence." The case further provides an excellent discussion of the *Dillon* concept.[2]

The California Supreme Court in *Krouse v. Graham,* 19 Cal.3d 59, 137 Cal.Rptr. 863, 562 P.2d 1022 (1977), provides us with an explanation of the *Dillon* requirement that the plaintiff's injury result from the sensory contemporaneous observance of the accident. The Court said:

"We confirm the propriety of the expression in *Archibald,* supra, that the *Dillon* requirement of 'sensory and contemporaneous observance of the accident' does not require a visual perception of the impact causing the death or injury." 19 Cal.3d at 76, 137 Cal.Rptr. at 872, 562 P.2d at 1031.

The *Krouse* Court further stated that there was substantial evidence from which the jury could find that plaintiff suffered serious shock to his nervous system causing gastric disturbance for which he was subsequently treated. This gastric problem constituted a sufficient physical injury to qualify under *Dillon* if it can be said fairly that it was caused by plaintiff's shock occasioned by his perception of the collision.

*Hunsley v. Giard,* 87 Wash.2d 424, 553 P.2d 1096 (1976), held that a defendant owes a duty to avoid negligent infliction of mental distress. However, the Court stressed that the element of foreseeability plays a large part in determining the scope of such duty, and that mental distress is not compensable unless it is the reaction of a normally constituted person, absent defendant's knowledge of some peculiar characteristic or condition of such person. The Court further held that plaintiff had a cause of action for physical heart damage allegedly resulting from emotional distress negligently inflicted when the defendant invaded plaintiff's home with her car outside of plaintiff's immediate presence and without immediate physical impact to her.

In *Hunsley,* supra, Justice Brachtenbach, of the Washington Supreme Court, has masterfully set forth the evolutionary history of the rules defining the boundaries of liability for mental distress injuries both in England and this country. In *Hunsley,* supra, the Court concluded that:

"Essentially we are balancing the interest of the injured party to compensation against the view that a negligent act should have some end to its legal consequences.

Balancing those interests and subject to the limitations hereafter set forth, we conclude that plaintiff who suffers mental distress has a cause of action; that is to say, the defendant has a duty to avoid the negligent infliction of mental distress. It is not necessary that there be any physical impact or the threat of an immediate physical invasion of the plaintiff's personal security. Our experience tells us that mental distress is a fact of life. With adequate limitations, the courts can administer the adjudication of this tort just as it does the complex intricacies of products liability and medical malpractice.

What are the confines of the defendant's liability? The very concept of negligence provides the primary boundaries.

\*  \*  \*  \*  \*  \*

The element of foreseeability plays a large part in determining the scope of defendant's duty.

\*  \*  \*  \*  \*  \*

A further restriction on the issue of liability is the requirement that the mental and emotional suffering, to be compensable, must be manifested by objective symptomatology. Admittedly there is some artificiality in drawing this line, but we do so in view of the facts of this case. Inherent in the formula is the principle that the plaintiff's mental distress must

---

2. See *Arauz v. Gerhardt,* 68 Cal.App.3d 937, 137 Cal.Rptr. 619 (1977), for denial of recovery on case where plaintiff was not at scene of impact and did not arrive for five minutes after impact.

be the reaction of a normally constituted person, absent defendant's knowledge of some peculiar characteristic or condition of plaintiff. In other words, was plaintiff's reaction that of a reasonable man? [Citation omitted]. This principle goes to the standard of liability, not the extent of recovery once liability is established. [Citations omitted]

Fear, fright or distress for the peril of another poses a troublesome problem, yet provides another safeguard against boundless liability. We decline to draw an absolute boundary around the class of persons whose peril may stimulate the mental distress. This usually will be a jury question bearing on the reasonable reaction to the event unless the court can conclude as a matter of law that the reaction was unreasonable." 87 Wash.2d 424, 553 P.2d at 1102, 1103.

The State of Washington, like California, has taken a most progressive step forward in the negligence field of tort law. We are most persuaded to follow the reasoning of their cases in this instant situation to grant relief to plaintiff.

It is the position of this Court that the defendant has stated a claim for which relief can be granted. We must emphasize that this case does not involve plaintiff's mental distress alone. Our decision is strictly predicated upon the existence of physical symptoms resulting from such emotional distress and the fact that the plaintiff was actually involved in the impact.

■ We do not pass upon whether there is liability for emotional distress unmanifested by physical symptoms or without the plaintiff being involved in the impact. We have solely decided that a daughter; involved with her mother in an impact; created by the negligence of another; whereby both mother and daughter are injured; and where the mother dies, has a cause of action against such tort-feasor. This action for negligent infliction of mental distress occasioned by her witnessing her mother suffer and die due to such negligent act will be allowed if physical symptomatology arises

from such infliction and such is alleged. The question of whether or not appellant can sustain her burden in proving such a claim is left to the province of the jury.

■ When the facts of the instant case are compared with those of the *Dillon* and *Hunsley* cases, it is evident if the reasoning of these cases is followed that justice can only be served by allowing plaintiff to plead her Count I. Plaintiff has fulfilled the requirements of the *Dillon* case in her pleadings, in that, 1. plaintiff was actually in the accident; 2. plaintiff's shock resulted from a direct emotional impact from the sensory and contemporaneous observance of the accident; and 3. plaintiff and the victim shared a mother-child relationship.

From the facts in this case, it is apparent that appellee had a duty not to drive her automobile into appellant's car. What was the foreseeable risk of that conduct? What were the threatened dangers? Who would be foreseeably endangered by appellee's conduct? Was appellant's reaction that of a reasonable person, normally constituted? These are all questions of fact for the trier of fact to resolve.

The order of the Superior Court dismissing appellant's Count One of her complaint is hereby reversed and the trial court is instructed to reinstate Count One of such complaint.

Reversed and remanded.

NELSON, J., concurring.

HAIRE, Judge, dissenting:

The issue on this appeal is whether the trial court erred in dismissing without leave to amend, Count One of plaintiff's complaint. The determination of that issue involves a consideration by this Court of the parameters of a defendant's liability for unintentionally caused emotional distress.

Count One of plaintiff's complaint alleges that the defendants' vehicle, on October 20, 1973, struck the automobile in which plaintiff, Dorothy Ann Keck, and her mother, Beatrice Gillespie, were passengers. There is a further allegation to the effect that as

a proximate result of the accident, plaintiff's mother received fatal injuries and expired some three months after the accident. The specific allegations which led to the filing of the defendants' motion to dismiss are contained in paragraph VI of Count One and read as follows:

> "Prior to the events aforementioned and during the prolonged and futile agonizing battle for life which MRS. GILLESPIE underwent, the Plaintiff DOROTHY ANN KECK had been a very close and loving daughter. Further, Plaintiff has been caused to suffer severe emotional and physical distress, sorrow, mental suffering, pain, shock, anxiety and anguish because of the aforementioned injuries to her mother and being present during her mother's battle for life all to her damage."

A close examination of this allegation reveals two distinct bases upon which recovery is sought for plaintiff's "severe emotional and physical distress". The first is for such distress resulting "because of the aforementioned injuries [to her mother]." The second is for the emotional and physical distress which resulted from "being present during her mother's battle for life. . . ."

From the foregoing it appears that plaintiff sought damages not only for her alleged mental and physical distress and shock resulting from the witnessing of her mother's injuries at the scene of the accident,[1] but also for her mental distress resulting from the observance of her mother's pain and suffering during the three month period following the accident while her mother was in the hospital prior to her death. In my opinion recovery should be allowed for the former, but not for the latter. None of the authorities cited in the parties' briefs or in the majority opinion allow recovery for emotional or physical damages resulting to a friend or relative from a mere observance of an injured third

party during a period not substantially contemporaneous with the occurrence of the tortious event. The authorities cited by the majority allow recovery for physical injury resulting from a direct emotional impact upon the plaintiff from a substantially contemporaneous sensory observance of the accident or the resulting injuries, as contrasted with the emotional trauma suffered by all friends and relatives engendered by observance of the pain, suffering and injuries of the accident victim over an extended period of time, such as during the three month period of hospitalization of plaintiff's mother in the case at hand. As noted by Prosser, such a restriction is admittedly quite arbitrary, and is imposed only to draw a line somewhere short of undue liability. It would be an entirely unreasonable burden on all human activity if the defendant, who, by his conduct, has negligently endangered one man, were to be compelled to pay for the lacerated feelings of every other person disturbed by reason of the injuries received by the victim of the negligent tortfeasor. Prosser, Law of Torts, § 54, at 334–35 (4th ed. 1971).

For the foregoing reasons I cannot concur in the majority opinion. I would affirm the trial court's dismissal of paragraph VI of Count One of plaintiff's complaint, and remand with instructions that plaintiff be permitted to amend the allegations of Count One so as to state a claim within the limitations set forth in this dissent.

---

1. Defendants contended, both in their motion to dismiss in the trial court and in their brief on this appeal, that plaintiff's allegations in paragraph VI did not sufficiently allege damages resulting from the witnessing of her mother's injuries at the scene of the accident. While the allegation may be somewhat inartfully drawn, it is my opinion that it is sufficient for this purpose.