705 P.2d 1360

William REBEN and Janice Reben, as conservators of the Estate of Frank Reben, a minor; and William Reben and Janice Reben, individually, Plaintiffs/Appellees,

v.

George B. ELY, M.D. and Evelyn Ely; John B. Kurtin, M.D. and Margaret Kurtin; Rose Hougland and Ernestine Miller, individually and as employees of Associated Ear, Nose and Throat Specialties, Ltd. and George B. Ely, M.D., P.C.; Associated Ear, Nose and Throat Specialties, Ltd; and George B. Ely, M.D., P.C.; and State of Arizona, Defendants/Appellants.

No. 2 CA–CIV 5174.

Court of Appeals of Arizona, Division 2, Department A.

March 25, 1985.

Rehearing Denied May 6, 1985.

Review Denied Sept. 4, 1985.

Law Offices of Richard D. Grand by James G. Heckbert and Richard D. Grand, Tucson, for plaintiffs/appellees.

Slutes, Sakrison, Grant & Pelander, P.C. by Tom Slutes, Tucson, for defendants/appellants Ely.

Chandler, Tullar, Udall & Redhair by Jack I. Redhair, Tucson, for defendants/appellants Kurtin, Hougland, Miller, and Associated Ear, Nose and Throat.

Kimble, Gothreau, Nelson & Cannon by Darwin J. Nelson, Tucson, for defendants/appellants Kurtin.

Robert K. Corbin, Atty. Gen. by Richmond K. Turner and O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears, P.A. by Larry L. Smith, Phoenix, for defendant/appellant State of Ariz.

OPINION

BIRDSALL, Presiding Judge.

Appellants present one single and unique question of first impression in this state, whether there is a cause of action available to parents in Arizona for the loss of consortium of an injured child. We are convinced that such a cause of action ought to be available and we affirm.

The facts of the case are of little significance to the legal question involved. Frank Reben, age 10, was administered a dosage of liquid cocaine, mistakenly thought to be liquid Tylenol. He suffered severe and permanent brain damage as a result of the mistake. In addition to damages awarded to the injured boy's estate, $5 million, his parents were awarded $500,-000 for past and future services to their

son, and $1,000,000 for loss of consortium, or as framed in the complaint, "the loss of his love, society, companionship and the right of every parent to have the society and companionship of a normal child free from injury caused by the wrongful conduct of another." Appellants do not contest the finding of liability or the damages awarded to the child's estate. Nor do they contest the $500,000 award to the parents for services. Their sole issue is that loss of filial consortium is not a cognizable cause of action in Arizona and that therefore the judge erred in permitting evidence and in instructing on that element of the parents' injury.

Loss of consortium is a recognized cause of action in Arizona as it is applied to spousal relations. Originally only the husband was entitled under common law to damages for the loss of consortium of his wife. As recently as 1954, the common law of this state denied the wife equivalent damages for loss of consortium. In *Jeune v. Del E. Webb Construction Co.*, 77 Ariz. 226, 269 P.2d 723 (1954), the court declined the offered opportunity to rewrite the common law. *Jeune* was subsequently overruled by *City of Glendale v. Bradshaw*, 108 Ariz. 582, 503 P.2d 803 (1972). There, our supreme court traced the history of the common law as it applied to a husband's right to loss of consortium damages, then observed that there were no reported cases in Arizona recognizing that right. Nevertheless, the court felt that the time had come to change the common law as it applied to a wife's recovery.

Quoting *Lueck v. Superior Court*, 105 Ariz. 583, 469 P.2d 68 (1970), the *Bradshaw* court observed,

" 'When we find that the common law or "judge-made law" is unjust or out of step with the times, we have no reluctance to change it.' " 108 Ariz. at 584, 503 P.2d at 805.

Appellees the Rebens argue that it is not necessary to declare a change in the common law of Arizona to accomplish an award

of damages for filial loss of consortium. They argue that Arizona Revised Statute § 12–641 [1] is a sufficient vehicle, read broadly, to allow such award. This view echoes the suggestion in a recent law review. Comment, the Parental Claim for Loss of Society and Companionship Resulting From the Negligent Injury of a Child: A Proposal for Arizona, 1980 Ariz.St.L.J. 909.

■ We decline to resort to such statutory manipulation. The purpose of § 12–641 is to specify who may bring an action to represent an injured child, and it amends a previous statute which allowed only the father of the child, except in the case of death or desertion by the father, to bring such action. We do not feel that a broadening of a cause of action can be read into the statute.

Appellants argue that such expansion of the law in this state should await a legislative declaration of public policy. They similarly rely on the Comment, supra, which proposed wording to amend § 12–641, or alternatively, Arizona's wrongful death statute to include "injury" as well as death. Noting that the legislature has entirely failed to act upon these suggested changes, the appellants conclude that the inaction is an indication of public policy of the state which mandates no change. We disagree equally with this position. Like Justice Feldman of our supreme court, we cannot find an expression of intent in the absence of legislative action. See *Ontiveros v. Borak*, 136 Ariz. 500 at 512, 667 P.2d 200 at 212 (1983). We note Justice Feldman's explanations of legislative inaction:

"There are many reasons why bills are not reported out of committee. For example: the bill may be opposed by a particular committee member or by the chairperson; efforts of special interest groups and lobbyists may be successful at the committee level; or a lack of time for consideration of the bill may prevent passage by the committee.

---

**1.** A.R.S. § 12–641. Persons who may maintain action for injury to child or ward. Either parent may maintain an action for the injury of a

child, and a guardian may maintain an action for the injury of his ward.

\* \* \* The legislature may well believe that when a judge-made common law rule has become obsolescent, anachronistic and unjust, the responsibility for change is ours, not theirs. There is no reason that we should refuse to act within our power and perform our duty when by so doing we further legislative objectives." Id.

■ Likewise, we also add that expansion of tort law claims is peculiarly within the realm of our judicial, rather than legislative, system. Tort law, like contract law, concerns private relations between parties. Our legislature's concern is with public law, the relation of the state to its citizens. For that reason, we are content to read A.R.S. § 12–641 to reflect a policy of *who* may come into court on behalf of another, not *what* law or claims they will argue there.

■ Having thus explained our reasons for concluding that recognizing this claim for filial loss of consortium due to the negligence of a third party is a function of the courts rather than the legislature, we now proceed to examine whether the time has arrived for Arizona law to so recognize the claim.

Our analysis recognizes a tension between the parties' understandings of the rationale behind a negligent tort action. Appellants state an assumption that the purpose of such action is to deter the tortfeasor, noting that statutory wrongful death causes of action prevent a tortfeasor from escaping liability simply because the victim dies rather than survives the injury. Such assumption goes hand in hand with the public policy appellants propound of discouraging behavior which leads to tortious injury. This analysis falls short, we feel, in the area of negligent torts. Nevertheless, the appellants argue that the jury verdict in the instant case is sufficient to "send a message" discouraging such behavior in other potentially negligent tortfeasors. Our modification of the jury's award would likely go unnoticed by such tortfeasors, if appellants' argument is followed to its logical conclusion. We shudder to think that any modification reducing the award, if noticed, would *encourage* potential tortfeasors to further negligence.

Appellees counter this assumption with the understanding that the purpose of a negligence cause of action is to make the injured party whole. Noting that one of the elements of a cause of action founded upon negligence from which liability will follow is actual loss or damage resulting to the interests of another, Prosser (W. Prosser and W. Keeton, Law of Torts, 5th ed. 1984, p. 165) writes:

"Negligent conduct in itself is not such an interference with the interests of the world at large that there is any right to complain of it, or to be free from it, except in the case of some individual whose interests have suffered."

In a broader sense,

"[t]he law of torts, then, is concerned with the allocation of losses arising out of human activities; and since these cover a wide scope, so does this branch of the law. 'Arising out of the various and ever-increasing clashes of the activities of persons living in a common society, carrying on business in competition with fellow members of that society, owning property which may in any of a thousand ways affect the persons or property of others—in short, doing all the things that constitute modern living—there must of necessity be losses, or injuries of many kinds sustained as a result of the activities of others. The purpose of the law of torts is to adjust these losses, and to afford compensation for injuries sustained by one person the result of the conduct of another.'" *Prosser and Keeton,* supra, at 6, quoting Wright, Introduction to the Law of Torts, 8 Camb.L.J. 238 (1944).

Our task, therefore, is to determine whether the loss of love, companionship, society, affection; in short, of consortium, of a child is such a loss and if it is compensable by the party liable for the loss. Our courts have frequently been presented this question in cases of wrongful death. Our wrongful death statute provides:

"§ 12–613. Measure of damages; nonliability for debts of decedent. In an action for wrongful death, the jury shall give such damages as it deems fair and just with reference to the injury resulting from the death to the surviving parties who may be entitled to recover, and also having regard to the mitigating or aggravating circumstances attending the wrongful act, neglect or default. The amount recovered in such action shall not be subject to debts or liabilities of the deceased, unless the action is brought on behalf of the decedent's estate."

In particular, *Southern Pacific Co. v. Barnes*, 3 Ariz.App. 483, 415 P.2d 579 (1966) concerned the allowance of damages to the survivors of an eleven-year-old girl killed in an auto-train crash, and *State v. Watson*, 7 Ariz.App. 81, 436 P.2d 175 (1975) concerned the deaths of a mother and her twelve-year-old daughter. In that case, this court observed that while granting generous awards to several injured parties for their medical and pain and suffering damages, the jury had granted $1,000 each to the estates of Mrs. Watson and her daughter Charm in their wrongful death actions. We declared that such award, particularly in the light of Mrs. Cole's medical and funeral expenses of $818.37 and Charm's funeral expenses of $593.12, shocked the conscience of the court at first blush and upon further reflection. We said,

"Our Supreme Court has said that in a wrongful death action such as this, the jury should consider 'loss of companionship, comfort and guidance.' [citation omitted] Surely, these items in the case of the loss of this wife and mother have a value of more than $181.63. And, surely, *the loss of this child to her surviving father cannot be approximated at $406.88.* In Southern Pacific Co. v. Barnes, [supra] this court approved an award of $35,000 for the loss of an 11-year old daughter whose scholastic accomplishments may have been slightly higher than those of Charm, but whose life was otherwise comparable." 7 Ariz. App. at 87–88, 436 P.2d 175 (emphasis added).

We are convinced that there is an equal ground for finding an injury in the instant case, where the damage to the child is so great as to likewise deprive the parents of the companionship, comfort, love, and society to be reasonably expected from the child during his minority. We believe that the Rebens have thus been deprived. The uncontroverted facts show that at the time of trial Frank had the mental age of a three-year-old, yet was less able to communicate or respond than a three-year-old. We are unable to justify denial of an award in such circumstances when only the bare fact of the child's existence distinguishes this from a wrongful death case.

Appellants argue that among the policy considerations militating against allowing parents to recover are the intangible character of the loss, the difficulty of measuring damages, and the dangers of double recovery. Both the intangible character and measure of damage arguments are refuted by the operation of our wrongful death statute, and we need not discuss them further.

Unfortunately, the double recovery argument is linked to appellants' perception of tort law as punishing the wrongdoer. They contend that in a wrongful death action, the victim is not alive to pursue a claim, so the surviving family is allowed to do so, and there is only one recovery. In the case of negligent (or, presumably, intentional) injury, the victim may recover for losses suffered, therefore the other persons injured by the tortfeasor's action ought not to have an additional recovery. The fallacy of this argument is demonstrated by the fact that the survivor of a decedent may recover for the estate of the victim for medical expenses incurred by the victim between the act and the death and for funeral expenses, as well as for the survivor's own loss of consortium, in a wrongful death action, so the only difference in allowing both Frank Reben's estate and the Reben parents to recover here is that the child's medical and other extraordinary expenses will continue longer than those of one who dies in a wrongful death action, possibly for his normal lifetime. We will not be understood as suggesting

that a more negligent act would have resulted in an earlier death, thus limiting the liability of the tortfeasors. That is certainly not indicated in the record on appeal in this case.

Our supreme court has addressed both the intangible character and the double recovery-burden on the tortfeasor issues in its opinion in *University of Arizona Health Sciences Center v. Superior Court of Maricopa County*, 136 Ariz. 579, 667 P.2d 1294 (1983). There the court analyzed the damages to be allowed in a wrongful pregnancy action when the pregnancy resulted in a healthy child. Again quoting Justice Feldman,

"Some cases base their decision on the speculative nature of the necessity to assess 'such matters as the emotional affect [sic] of a birth on siblings as well as parents, and the emotional as well as pecuniary costs of raising an unplanned and, perhaps, an unwanted child in varying family environments,' [citation omitted] ... We think, however, that juries in tort cases are often required to assess just such intangible factors, both emotional and pecuniary, and see no reason why a new rule should be adopted for wrongful pregnancy cases." 136 Ariz. at 582–83, 667 P.2d at 1297–98.

And as to undue burden on the negligent tortfeasor,

"A third basis ... is the argument that the 'injury is out of proportion to the culpability of the [wrongdoer]; and that the allowance of recovery would place too unreasonable a burden upon the [wrongdoer], since it would likely open the way for fraudulent claims ...' ... This, of course, is the hue and cry in many tort cases and in essence is no more than the fear that some cases will be decided badly. Undoubtedly, the system will not decide each case correctly in this field, just as it does not in any field, but here, as in other areas of tort law, we think it better to adopt a rule which will enable courts to strive for justice in all cases rather than to rely upon one which will ensure injustice to many." [citations omitted] 136 Ariz. at 583, 667 P.2d at 1298.

Appellants finally argue that it ill serves Arizona to be in the forefront of states permitting this cause of action. Asserting that "many bastions of progressive thought, such as California, Illinois, New York, Pennsylvania, and New Jersey," have denied recovery for loss of filial consortium, they urge us to do likewise. Initially, we note that California has not dealt with the issue since 1977 in *Baxter v. Superior Court of Los Angeles County*, 19 Cal.3d 461, 138 Cal.Rptr. 315, 563 P.2d 871 (1977). We can only presume that they have not been presented with the question since then, and we do not speculate as to what the California Supreme Court might do if deciding the issue today. We can only indicate what *we* feel today's needs and concepts as to the family and its relationships dictate.

Additionally, Illinois has, since appellants' count of the "progressive thought" jurisdictions, approved the maintenance of a cause of action for the loss of a minor child's society and companionship apart from a wrongful death action in *Dymek v. Nyquist*, 128 Ill.App.3d 859, 83 Ill.Dec. 52, 469 N.E.2d 659 (1984). Basing its result on an earlier Illinois Supreme Court decision in a wrongful death case, *Bullard v. Barnes*, 102 Ill.2d 205, 82 Ill.Dec. 448, 468 N.E.2d 1228 (1984), the *Dymek* court quoted *Bullard*, stating, " 'parents are *entitled* to a presumption of pecuniary injury in the loss of a child's society, ... Defendants may rebut the presumption by presenting evidence that a parent and child were estranged.' ", 83 Ill.Dec. at 59, 469 N.E.2d at 666, emphasis in *Dymek*. *Dymek* did not concern the death, but rather the "brainwashing" of the child.

We do not advance into this area of common law completely alone among our sister jurisdictions. Ohio in 1983 adopted the cause of action in *Norvell v. Cuyahoga County Hospital*, 11 Ohio App.3d 70, 463 N.E.2d 111 (1983), by analogizing to the legislature's recently amended wrongful death statute. The court stated:

"The public policy governing a parent's claim for a child's death is analogous to

**314**

the policy controlling the parent's derivative claim for a child's injury. Indeed the [Ohio] Supreme Court made that analogy when it denied recovery for loss of a child's society in wrongful death actions before the 1982 amendment. [citation omitted]. Defendants rely on that language to show that there is no right to recover for loss of an injured child's 'society, companionship and comfort.' Now that the wrongful death act has been changed to allow recovery for such losses, the analogy compels the opposite conclusion." 463 N.E.2d at 115.

Similarly the Wisconsin Supreme Court adopted the cause of action for injured minor children against a negligent tortfeasor in *Shockley v. Prier*, 66 Wis.2d 394, 225 N.W.2d 495 (1975). Colorado acknowledges such a cause of action by implication, see *Miller v. Subia*, 514 P.2d 79 (Colo.App. 1973). Similarly, see *Yordon v. Savage*, 279 So.2d 844 (Fla.1973) wherein the court said,

> "In *Wilkie v. Roberts* [91 Fla. 1064, 109 So. 225 (1926)], this Court held that the parent, or guardian, of an unemancipated minor child, injured by the tortious act of another, has a cause of action in his own name for medical, hospital, ... and for the loss of the child's companionship, society, and services, including personal services to the parent ... We hold today that this cause of action is available to *either* the father *or* the mother, *or* to the two parents together, ..." [emphasis in original] 279 So.2d at 846.

Three other states have amended their wrongful death statutes to include injury to children, and provide for loss of consortium damages by statute. See Idaho, Idaho Code § 5–311; Iowa, Iowa Rule of Civil Procedure No. 8; Washington, R.C.W. 4.24.010.

Because the appellants urge that a decision affirming the trial court in this case will open the floodgates, thus giving rise to a vast number of related causes of action and damages beyond control, we deem it advisable to limit the possible implications of this decision. We are not deciding, for example, whether a loss of consortium claim for damages exists in other relationships. The most obvious of these is that most recently recognized in *Ueland v. Reynolds Metals Co.*, 103 Wash.2d 131, 691 P.2d 190 (1984), that of minor children for severe injuries to their father. Nor do we decide whether the cause of action which we do recognize, the loss of the Rebens' consortium with Frank, extends beyond a child's reaching the age of majority. Although the award in the present case may well have extended beyond that age (the jury was instructed as to the life expectancy of the parents) that was not an issue presented in this appeal.

The loss of consortium claim in the instant case was submitted to the jury by separate verdict because the trial judge recognized that it was an extension of the common law. In the future, such a separate verdict would be unnecessary and the claim for this damage would be only one element of the parents' damages.

The common law is fluid and responsive. The facts of this case illustrate a real loss of companionship with the injured child, and it is our duty today to affirm the verdict and judgment of the trial court.

Affirmed.

LIVERMORE and FERNANDEZ, JJ., concur.