722 P.2d 955

**HOWARD FRANK, M.D., P.C., an Arizona corporation; Howard Frank, M.D., an individual, Petitioner,**

v.

**SUPERIOR COURT OF the STATE OF ARIZONA, In and For the COUNTY OF MARICOPA, and the Honorable John Sticht, Judge of the Superior Court of Arizona, and Emily Hathaway and Roland Lee Hathaway, wife and husband, Respondents.**

No. 18525–SA.

Supreme Court of Arizona,
En Banc.

July 28, 1986.

Teilborg, Sanders & Parks, P.C. by Frank A. Parks, Brian R. Burt, Phoenix, for petitioner.

Leonard and Clancy, P.C. by James J. Leonard, Jr., Phoenix, for respondents Hathaway.

GORDON, Vice Chief Justice.

This Petition for Special Action raises the issue of whether parents may maintain a cause of action for loss of consortium against a third party who negligently injures their adult child. The petition was brought by Howard Frank, M.D., who claims that the respondent judge erred by denying a motion for summary judgment in the underlying tort action. We have jurisdiction pursuant to Arizona Const. art. 6 § 5(1), and Ariz.R.Sp.Act. 4, 17A A.R.S.

The real parties in interest are Emily and Roland Lee Hathaway, parents of Marilyn Hathaway, an adult. In 1983 Marilyn Hathaway sued petitioner, alleging that his negligent administration of anesthesia during surgery had caused her severe brain damage. Following a jury trial, Marilyn was awarded damages of $5 million. The trial court granted petitioner a new trial after Marilyn refused a remittitur to $3.1 million. Both parties have appealed from that judgment.

On March 7, 1985, Emily and Roland Lee Hathaway filed a separate lawsuit, alleging that as a result of petitioner's negligence they have been deprived of their daughter's love, companionship, comfort, affection, society, solace, and moral support, and requesting damages to compensate them for the loss of consortium of their only child.

On April 22, 1985, petitioner moved to dismiss the complaint on the ground that Arizona does not recognize a cause of action for loss of consortium of an adult child. The respondent judge denied the motion on August 12, 1985, relying upon *Reben v. Ely*, 146 Ariz. 309, 705 P.2d 1360 (App.1985) (review denied Sept. 4, 1985), which recognized for the first time a cause of action for loss of consortium of a minor child. The petitioner now seeks an order from this Court requiring the respondent judge to grant the motion for summary judgment.

The petition raises a legal issue of statewide importance which is a matter of first impression in Arizona. We therefore felt it would be appropriate to accept jurisdiction in order to decide whether a cause of action

exists for loss of consortium of an adult child and thereby determine whether the respondent judge failed "to perform a duty required by law as to which he has no discretion" or acted "in excess of [his] ... legal authority...." Ariz.R.Sp.Act. 3(a) and (b), 17A A.R.S.

I

The starting point of our discussion must be *Reben v. Ely, supra.* In *Reben* a ten-year-old child was administered a dosage of liquid cocaine, mistakenly thought to be liquid Tylenol. The result was severe and permanent brain damage. In addition to the award to the child's estate, his parents were awarded $500,000 for past and future services of their son and $1 million for loss of consortium, described in their complaint as "the loss of his love, society, companionship, and the right of every parent to have the society and companionship of a normal child free from injury caused by the wrongful conduct of another." 146 Ariz. at 310, 705 P.2d at 1361.[1] The defendants challenged the award of consortium damages, asserting that Arizona did not recognize a cause of action for loss of filial consortium. The court of appeals disagreed. After analyzing Arizona's wrongful death statute, A.R.S. § 12–613, which has been interpreted to allow for consortium damages, the court concluded that "[w]e are unable to justify denial of an award in such circumstances when only the bare fact of the

child's existence distinguishes this from a wrongful death case." 146 Ariz. at 312, 705 P.2d at 1363. Thus Arizona has joined those jurisdictions which allow recovery for loss of filial consortium of a minor child where the child has been severely injured by the negligence of a third party.[2]

In both *Reben v. Ely* and the present case the defendants raised a host of policy arguments against recognizing claims for loss of filial consortium. They boil down to these: that the loss is intangible and cannot be compensated by money, that damages will necessarily be speculative, that the defendant is exposed to liability out of proportion to the negligent act, and that the family may reap a double recovery. These arguments were raised in the past when we were called upon to value consortium, and as a brief examination of Arizona legal history will confirm, the arguments against compensating family members for loss of consortium were lost not today, or in *Reben,* but during the past two decades.[3]

In *Jeune v. Del E. Webb Const. Co.,* 77 Ariz. 226, 269 P.2d 723 (1954), this Court denied a wife's claim for loss of spousal consortium on the ground that "[t]he common law is and always has been that the wife has no such cause of action." 77 Ariz. at 226, 269 P.2d at 723. However, in *City of Glendale v. Bradshaw,* 108 Ariz. 582, 503 P.2d 803 (1972), that portion of the

---

**1.** Consortium has been variously defined, but essentially consists of love, affection, protection, support, services, companionship, care, society, and in the marital relationship, sexual relations. Note, *The Child's Claim for Loss of Consortium Damages: A Logical and Sympathetic Appeal,* 13 S.D.L.Rev. 231 n. 3 (1975). It is often abbreviated as society and companionship.

**2.** Other states recognizing a cause of action by judicial decision for loss of consortium of a minor child negligently injured by a third party include Wisconsin, *Shockley v. Prier,* 66 Wisc.2d 394, 225 N.W.2d 495 (1975); Florida, *Yordon v. Savage,* 279 So.2d 844 (1973); Ohio, *Norvell v. Cuyahoga County Hospital,* 11 Ohio App.3d 70, 463 N.E.2d 111 (1983); and Illinois, *Dymek v. Nyquist,* 128 Ill.App.3d 859, 83 Ill.Dec. 52, 469 N.E.2d 659 (Ill.App. 1 Dist.1984). Three other states provide for such an action by statute: Idaho, Iowa and Washington.

**3.** Although the petitioner does not challenge the holding of *Reben v. Ely* his arguments in the present case pertain equally to *Reben.* Our rejection of petitioner's arguments today should make plain our approval of *Reben.* However, we emphasize that our decision is limited to parents only. While all family members enjoy a mutual interest in consortium, the parent-child relationship is undeniably unique and the wellspring from which other family relationships derive. It is the parent-child relationship which most deserves protection and which, in fact, has received judicial protection in the past. *See, e.g., Santosky v. Kramer,* 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); *Stanley v. Illinois,* 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *In the Matter of the Appeal in Maricopa County Juvenile Action No. JS–5209 and No. JS–4963,* 143 Ariz. 178, 692 P.2d 1027 (App.1984).

*Jeune* case denying the right of consortium to the wife was specifically overruled. Our decisions interpreting the breadth of damages available under the wrongful death statute, A.R.S. § 12–613, are equally significant.[4] Beginning in 1965 this Court held that "[t]he measure of damages is no longer limited to pecuniary damages, but also includes allowance for such things as loss of companionship, comfort, and guidance." *Boies v. Cole*, 99 Ariz. 198, 203, 407 P.2d 917, 920 (1965).[5] The wrongful death statute has been liberally construed to allow damages for "intangible[s] as to which there can be no unanimity of opinion[,]" *State v. Watson*, 7 Ariz.App. 81, 87, 436 P.2d 175, 181 (1968), including "anguish, sorrow, stress, mental suffering, pain and shock...." *City of Tucson v. Wondergem*, 105 Ariz. 429, 433, 466 P.2d 383, 387 (1970). In sum, we have not hesitated to assign a monetary value to the elements of consortium—society, companionship, care, support, and affection, to name a few—even in the most difficult cases. *See, e.g., Summerfield v. Superior Court*, 144 Ariz. 467, 698 P.2d 712 (1985) (parents may maintain loss of consortium action in wrongful death of viable fetus); *University of Arizona Health Sciences Center v. Superior Court*, 136 Ariz. 579, 667 P.2d 1294 (1983) (pecuniary damages in "wrongful pregnancy" action may be offset by intangible value of child's consortium). As always, "[w]e are confident that the inherent good sense of the jury is the best safeguard to 'runaway' verdicts and unfounded speculation in the award of damages." *University of Arizona Health Sciences Center v. Superior Court*, 136 Ariz. at 585, 667 P.2d at 1300.

It is apparent from the foregoing discussion that the award of consortium damages is a well-established remedy in Arizona for negligent injury to family relations. Thus the court of appeals' decision in *Reben* to allow an award of consortium damages was not particularly novel. What was unusual about *Reben* was the decision to extend the loss of consortium action beyond wrongful death, where it is well-established, to negligent injury. The cases in which we approved recovery for loss of consortium, *e.g. Boies v. Cole, supra; State v. Watson, supra; City of Tucson v. Wondergem, supra;* and *Summerfield v. Superior Court, supra,* involved a wrongful death. The significance of *Reben v. Ely* was the court of appeals' decision that no meaningful distinction can be drawn between death and severe injury where the effect on consortium is concerned.

Often death is separated from severe injury by mere fortuity; and it would be anomalous to distinguish between the two when the quality of consortium is negatively affected by both.

> "It is easy to see that the loss of a child through his death takes from his parents the society and companionship that is the essence of the lost relationship. But consider the magnitude of the loss of society and companionship that occurs when a normal [child] is suddenly reduced to a blind, nearly deaf, partially paralyzed child with a mental age of three. The parental expectations for the continuation of the family relationship are the same in either case. That the parents still have their son to love and care for is a factor to consider in determining the extent of their loss, but does not negate the loss. They have sustained a genuine loss in the nature of the society and companionship they can anticipate receiving from their son as a consequence of his injuries.

---

4. A.R.S. § 12–613 reads in pertinent part:

   "In an action for wrongful death, the jury shall give such damages as it deems *fair and just* with reference to the injury resulting from the death to the surviving parties who may be entitled to recover,...." (emphasis added)

5. Arizona is now one of thirty-five states which allow recovery for loss of companionship and

society in a wrongful death action brought by the parents. *See Sanchez v. Schindler*, 651 S.W.2d 249 (Tex.1983), and cases cited therein at pp. 252–253 nn. 3, 4, and 5. The *Schindler* decision was simply the latest to recognize that "[t]hese elements of damage are not too speculative to be given a monetary value." 651 S.W.2d at 253.

Perhaps the loss of companionship and society experienced by the parents of a child permanently and severely injured ... is in some ways even greater than that suffered by parents of a deceased child. Not only has the normal family relationship been destroyed, as when a child dies, but the parent also is confronted with his loss each time he is with his child and experiences again the child's diminished capacity to give comfort, society, and companionship."

Note, *The Parental Claim for Loss of Society and Companionship Resulting From the Negligent Injury of a Child: A Proposal for Arizona,* 1980 Ariz.St.L.J. 909, 923.

Arizona is not alone in recognizing that severe injury may have just as deleterious an impact on filial consortium as death. *See* n. 1, *supra.* However, *Reben v. Ely,* like similar cases from other jurisdictions, dealt with injury to a minor child. In *Reben* the court allowed parents to seek recovery "where the damage to the child is so great as to likewise deprive the parents of the companionship, comfort, love, and society to be reasonably expected from the child *during his minority.* " 146 Ariz. at 312, 705 P.2d at 1363 (emphasis added), and specifically declined to decide "whether the cause of action which we do recognize ... extends beyond a child's reaching the age of majority." *Id.* at 314, 705 P.2d at 1365. The question of whether *Reben v. Ely* should be extended to include adult children, as urged by the real parties in interest and the respondent judge, must now be answered.

## II

The most salient legal argument against extending the filial consortium action to adult children is the fact that emancipation frees parents and children from the reciprocal legal obligations of support and obedience. It is argued that parents have some

form of legal entitlement to the services and earnings of their children during their children's minority, loss of which is compensable, but that accession to majority expunges this entitlement and the concomitant right to recovery for injury to the children. However, we believe that this argument against extension of a filial consortium action to adults is premised upon an archaic and outmoded pecuniary theory of parental rights and fundamentally misapprehends the modern elements of consortium. Accordingly, we are convinced that the cause of action first recognized in *Reben v. Ely* should be extended to adult children.

Our reasons for rejecting the age distinction sought by petitioner are based upon the history and evolution of the consortium action. By necessity, then, we must examine the roots of the consortium action and trace its development through modern times. This examination will expose the legal inconsistency of distinguishing between minor and adult children in filial consortium actions.

The origin of the consortium action at common law was the right of the master to recovery for tortious injury to his servants, since in such a case the master would suffer a loss of services in addition to whatever loss the servant himself suffered. Prosser and Keeton, *The Law of Torts,* § 125, p. 931 (5th ed. 1984). By 1619 this idea was carried over and applied to marital services and the husband was allowed to recover from the tortfeasor who had injured his wife. *Id.* "Like the master, the father had a proprietary interest in the services of his wife ... which afforded him an action when he was deprived of those services by the defendant's wrongdoing." Note, *The Child's Right to Sue for Loss of A Parent's Love, Care, and Companionship Caused By Tortious Injury to the Parent,* 56 B.U.L.Rev. 722, 724 (1976).[6] At

---

**6.** However, the wife had no reciprocal action for negligent injury to her husband's consortium since she had no independent legal status: "husband and wife were one; and he was the one." 3 W. Blackstone, *Commentaries on the*

*Law of England* 433–36 (3rd ed. 1884). Even the advent of Married Women's Acts in the nineteenth century, which removed the wife's incapacity to sue, failed to provide wives with a comparable action for loss of consortium. 56

its earliest stage, then, the action for loss of consortium was in fact an action for loss of services to which the master was entitled. Gradually, however, services became only one element of the action as the intangible elements of love, comfort and society emerged as the predominant focus of consortium actions.

At common law the child, like the wife, was relegated to the role of servant. "[A] child, like a servant, was thought to be solely an economic asset to his family because he was another source of income...." Note, *Torts—Parents' Recovery For Loss of Society and Companionship of Child*, 80 W.Va.L.Rev. 340 (1978). As a result, "loss of services and wages of the injured or deceased child came to be recognized as a customary and necessary element of recoverable damages[,]" *id.* at 341, but a parent had no cause of action for loss of a child's society and companionship. *Id.* Needless to say, the Dickensian era of brutal child labor, where "ample work could be found for the agile bodies and nimble fingers of small children...." *Wycko v. Gnodtke*, 361 Mich. 331, 335, 105 N.W.2d 118, 120 (1960), is long past. Today a plethora of laws aimed at children, *e.g.*, child labor and compulsory education laws, virtually guarantees that children will not be an economic asset to their par-

ents. Children are now valued for their society and companionship, and "[t]he true significance of a parent's action under modern practice is that it compensates the parents' emotional losses when their child is injured." 56 B.U.L.Rev. at 731–732. Indeed, if we refuse compensation for loss of consortium and insist on "allowing only recovery for such earnings as he might be expected to contribute to his parents during his minority, recovery would necessarily be small, non-existent or wholly fictional, since cost of rearing a child would almost always exceed any contributions he would make financially." D. Dobbs, *Remedies*, § 8.4, p. 560 (1973). Thus the right to a child's services and earnings *should not be considered a prerequisite* to the right to bring an action for loss of consortium...." 56 B.U.L.Rev. at 732 (emphasis added).

In striking contrast to the significant changes in spousal consortium actions, however, filial consortium actions continue to be haunted by the common law master-servant heritage despite parallel changes in social status and the death of the economic-services rationale. Even those states which recognize the parents' action for loss of filial consortium of their injured children restrict the action to minor children.[7] Why

---

B.U.L.Rev. at 725. It was not until 1950 that the Court of Appeals for the District of Columbia Circuit held that wives, like husbands, could sue for loss of consortium caused by negligent injury. *Hitaffer v. Argonne Co.*, 183 F.2d 811 (D.C. Cir.1950), *cert. denied*, 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624 (1950). Even then the concept was not greeted with immediate enthusiasm. *Compare Jeune v. Del E. Webb Const. Co.*, 77 Ariz. 226, 269 P.2d 723 (1954) ("the common law is and always has been that the wife has no such cause of action") *with City of Glendale v. Bradshaw*, 108 Ariz. 582, 503 P.2d 803 (1972) (overruling that portion of *Jeune*). Today a majority of states now extend to the wife a cause of action for loss of consortium caused by the defendant's negligence. *See* 56 B.U.L.Rev. at 727.

Interestingly, nearly all states have chosen to extend this action to wives rather than abolish it for husbands, despite the fact that the husband's action was based upon the wife's common law status as a servant or chattel. This approach recognizes the evolution of the right of action

from its common law origins. "Judicial decisions have changed the action from one based upon the servile status of the wife or child to one based upon an awareness of the emotional benefits that stem from the family relationship." 56 B.U.L.Rev. at 727. The action is no longer predicated upon loss of services; "sentimental interests now predominate." *Id.*

7. *See Shockley v. Prier, supra,* wherein the Wisconsin Supreme Court noted that "today's relationship between parents and children is, or should be, more than that between master and servant...." 66 Wisc. at 399, 225 N.W.2d at 500, yet limited a parent's cause of action for loss of aid, comfort, society and companionship to minor children; *Yordon v. Savage, supra* (minor child); *Norvell v. Cuyahoga County Hospital, supra* (minor child); and *Dymek v. Nyquist, supra* ("it is our opinion that we should now recognize a cause of action for parental loss of a minor child's society and companionship"). However, the language of these opinions may simply have been directed toward the facts before them rather than the merits of an action

they do so is puzzling, since the common law master-servant analogy is clearly antiquated and long overdue for judicial burial. We do not believe that an age distinction is justified. The demise of the pecuniary services theory of consortium and subsequent emergence of companionship and society as the primary components of the action has vitiated the legitimacy of any age distinction in filial consortium actions.

Although the court in *Reben v. Ely* limited its holding to minors, it did so out of a laudable hesitancy to go beyond the facts before it. The court did not once refer to a pecuniary services theory to support its holding. Instead, the court of appeals relied solely upon the innate value of a child's companionship, comfort, love and society and the relationship between severe injury and wrongful death. It is irrelevant that parents are not entitled to the services of their adult children; they continue to enjoy a legitimate and protectible expectation of consortium beyond majority arising from the very bonds of the family relationship. Surely nature recoils from the suggestion that the society, companionship and love which compose filial consortium automatically fade upon emancipation; while common sense and experience teach that the elements of consortium can never be commanded against a child's will at any age. The filial relationship, admittedly intangible, is ill-defined by reference to the ages of the parties and ill-served by arbitrary age distinctions. Some filial relationships will be blessed with mutual caring and love from infancy through death while others will always be bereft of those qualities. Therefore, to suggest as a matter of law that compensable consortium begins at birth and ends at age eighteen is illogical and inconsistent with common sense and experience. Human relationships cannot and should not be so neatly boxed. "The law does not fly in the face of nature, but rather acts in harmony with it." *Harper v. Tipple*, 21 Ariz. 41, 44, 184 P. 1005, 1006 (1919) (citation omitted).

We note that in wrongful death actions no arbitrary age limit is placed upon recovery for loss of filial consortium. A.R.S. § 12–613 does not distinguish between minor and adult children. We see no reason why in cases of severe injury the result should be any different. *Cf. Ueland v. Reynolds Metals Co.*, 103 Wash.2d 131, 691 P.2d 190 (1984) (adult children may recover for loss of parental consortium; age of the child relevant only for fixing damages).

Petitioner also raises two policy arguments against extension of *Reben v. Ely* to adult children: an expanded class of plaintiffs will spawn increased litigation and insurance costs will increase. The danger of an increase in litigation has been raised as an objection in almost every instance where the courts have been asked to recognize a new cause of action. *Theama By Bichler v. City of Kenosha*, 117 Wis.2d 508, 516, 344 N.W.2d 513, 521 (1984). The short answer to this objection is that it is the court's responsibility to deal with suits on their merits, whether there be few suits or many. 56 B.U.L.Rev. at 732. The rights of a new class of tort plaintiffs should be forthrightly judged without engaging in gloomy speculation as to where it will all end. *Berger v. Weber*, 82 Mich. App. 199, 204, 267 N.W.2d 124, 129 (1978), modified and aff'd, 411 Mich. 1, 303 N.W.2d 424 (1981) (child has independent cause of action for loss of parental society and companionship when parent is negligently injured). Such fears have been likened to "the fabled cry of wolf", and have often proven groundless. Ingber, *Rethinking Intangible Injuries: A Focus on Remedy*, 73 Calif.L.Rev. 772, 817 (1985). We do not believe that increased litigation will be a problem because in the vast majority of cases involving injury to a child the injury will not be so severe that the parents suffer a loss of society and companionship. If, however, litigation should increase, "the existence of a multitude of claims merely shows society's pressing need for [such] redress." *Dillon v. Legg*, 68 Cal.2d 728, 735 n. 3, 69 Cal.Rptr. 72, 77 n. 3, 441 P.2d

involving adult children. None explicitly analyzes the factual situation we face.

912, 917, n. 3 (1968) (recognizing cause of action for negligent infliction of emotional distress).

Moreover, while the overcrowding of dockets is a legitimate concern, there are procedural mechanisms that would enable the courts to minimize any increased burden. For example, compulsory joinder of the parents' consortium claim with the child's personal injury claim where feasible would eliminate the burden of multiple lawsuits. *See generally* Love, *Tortious Interference with the Parent-Child Relationship: Loss of an Injured Person's Society and Companionship*, 51 Ind.L.J. 590, 617–619 (1976).

As for the claim that recognizing the parents' cause of action for loss of filial consortium will raise insurance costs, even courts which have declined to expand loss of consortium actions reject this argument. The Supreme Court of Oregon has stated it well: "[a] person's liability in our law still remains the same whether or not he has liability insurance; properly, the provision and cost of such insurance varies with potential liability under the law, not the law with the cost of insurance." *Norwest v. Presbyterian Intercommunity Hospital*, 293 Or. 543, 548, 652 P.2d 318, 323 (1982) (rejecting child's claim for loss of parents' society and companionship).

In conclusion, we believe parents should have a remedy in damages against a negligent tortfeasor whose actions have so severely injured the parents' adult child that they are deprived of their child's society, companionship, love and support—in short, of the child's consortium. Arizona has long recognized that loss of consortium is a compensable harm, and we see no basis for limiting this action solely to cases of wrongful death. In particular, we can find no reason for limiting the class of plaintiffs to parents of minor children when the parents of adult children may suffer equal or greater harm. Why should the parents of an injured seventeen-year-old be allowed to recover for loss of consortium, but not the parents of an injured eighteen-year-old? We can divine no adequate answer based on law or logic; accordingly, the relief sought by petitioner is denied.

HAYS and FELDMAN, JJ., concur.

HOLOHAN, Chief Justice, specially concurring.

After this court's decision in *Lueck v. Superior Court, County of Cochise*, 105 Ariz. 583, 469 P.2d 68 (1970), the Legislature amended A.R.S. § 12–612 to enable parents to recover damages for the injury resulting from the wrongful death of their child irrespective of the age of the child or the existence of a surviving spouse or children of the deceased. *See Begay v. City of Tucson*, 148 Ariz. 505, 715 P.2d 758 (1986). The cited statute established the public policy of this state, and the result reached by the court in this case is a logical extension of that policy; therefore, I concur in the court's disposition of the matter.

CAMERON, J., concurs in the special concurrence.