782 P.2d 1166

James Anthony PIERCE, a single man; and James Pierce and Susan Pierce, husband and wife, Plaintiffs/Appellants,

v.

CASAS ADOBES BAPTIST CHURCH, an Arizona corporation; and Damon Richard Becker and Peggy S. Becker, husband and wife, Defendants/Appellees.

No. 2 CA–CV 87–0308.

Court of Appeals of Arizona, Division 2, Department A.

July 21, 1988.

Review Granted Dec. 13, 1988.

Dickerson, Butler, Schlievert & Rabb, P.C. by J. Patrick Butler, Tucson, for plaintiffs/appellants.

Bury, Moeller, Humphrey & O'Meara by David C. Bury, Tucson, for defendants/appellees.

## OPINION

HOWARD, Presiding Judge.

The sole issue raised in this appeal is whether the trial court properly denied a motion for additur, reconsideration and/or new trial on the issue of loss of consortium.

James Anthony Pierce (Tony) was severely injured on June 15, 1984, in a motor vehicle accident while on a church-sponsored outing. At the time he was 17 years of age. He suffered a ruptured spleen, ruptured liver, a concussion, bruised heart and lungs and his back was broken in two places. After four days in the Gila General Hospital to stablize his internal injuries, he was evacuated by air to Tucson Medical Center where he remained hospitalized for another 24 days.

He was taken home by his parents on July 12, 1984, after being fitted with a fiberglass torso cast to support the weight of his upper body and receiving physical therapy to relearn to walk. When he was released from the hospital, he suffered from severe physical problems. He could not feed, bathe, dress or clean himself and required extensive care from his parents. Tony's mother, a bank teller, took a leave of absence to care for him.

At present, he suffers from bladder incontinence and must catheterize himself four times a day. He still occasionally urinates on himself without realizing it. He also suffers from bowel incontinency. He has numbness in the area of his anus and diminished sensation in his penis. These conditions are permanent and may worsen. He has already been hospitalized once for complications with bladder infections. He cannot stoop, squat, bend, sit or stand for extended periods without discomfort. His spine has been fused from T8 through L5 by means of two 20-inch steel rods inserted and attached in his back parallel to his spine. He has flat back syndrome, meaning he walks with a rigidly straight back with his hips pushed forward resulting in permanent pain and discomfort. The steel rods are permanently in place.

Tony and his parents brought suit against the church and the driver of the vehicle. Liability was admitted and the issue of damages was tried to the court. The court awarded Tony $1,320,742. This sum included $265,000 for loss of earning capacity, $155,742 for future medical expenses and $900,000 in damages. The court awarded his parents $42,638.51 for medical expenses and $25,000 for lost wages and expenses in caring for Tony until he recovered. The court denied the parents' claim for loss of consortium. Appellants contend that the trial court erred in this regard. We do not agree and affirm.

Appellants rely on two Arizona cases in support of their argument, *Frank v. Superior Court*, 150 Ariz. 228, 722 P.2d 955 (1986), and *Reben v. Ely*, 146 Ariz. 309, 705 P.2d 1360 (App.1985). In *Reben*, a 10-year-old was mistakenly administered liquid cocaine instead of liquid Tylenol, suffering severe and permanent brain damage as a result. In *Frank*, an emancipated child suffered severe brain damage as a result of negligently administered anesthesia during surgery.

In *Reben*, this court reviewed the development of loss of consortium as a cause of action. We looked at our wrongful death statute under which our courts have permitted recovery for loss of consortium on the death of a child, *Southern Pacific Co. v. Barnes*, 3 Ariz.App. 483, 415 P.2d 579 (1966), and concluded:

"We are convinced that there is an equal ground for finding an injury in the instant case, where the damage to the child

is so great as to likewise deprive the parents of the companionship, comfort, love, and society to be reasonably expected from the child during his minority.... The uncontroverted facts show that at the time of trial Frank had the mental age of a three-year-old, yet was less able to communicate or respond than a three-year-old. We are unable to justify denial of an award in such circumstances when only the bare fact of the child's existence distinguishes this from a wrongful death case." 146 Ariz. at 312, 705 P.2d at 1363.

We permitted recovery by the parents for loss of consortium of the minor child, but limited our holding to the facts of that case. In *Frank v. Superior Court*, supra, our supreme court held that the age of the child is immaterial, stating:

"[W]e can find no reason for limiting the class of plaintiffs to parents of minor children when the parents of adult children may suffer equal or greater harm. Why should the parents of an injured seventeen-year-old be allowed to recover for loss of consortium, but not the parents of an injured eighteen-year-old? We can divine no adequate answer based on law or logic...." 150 Ariz. at 234, 722 P.2d at 961.

The court also reviewed Arizona case law and recognized "that the award of consortium damages is a well-established remedy in Arizona for negligent injury to family relations." Id. at 230, 722 P.2d at 957. In Arizona, therefore, parents can recover damages for loss of their child's consortium because of serious injury regardless of the age of the child.

In this case, the record shows that the parents have not lost the love, affection or companionship of their son as a result of the injuries, and also shows that Tony completed high school after the accident, is not confined to a wheel chair or bed, and is capable of obtaining gainful employment. Nevertheless, the parents contend that they are entitled to recover for loss of consortium because of the emotional effect upon them in seeing Tony's injuries and their effect on Tony, and in seeing a happy, healthy, active 17–year–old son become dis- abled, incontinent, depressed and facing a future dramatically different than the one they had hoped and reasonably expected for him. In essence, what the parents are seeking to recover is damages for their own pain, suffering and mental anguish, and *not* for loss of consortium.

The parents contend that the *Frank* case supports their claim. They base this conclusion on language in the *Frank* case quoted from a law review note that "[t]he true significance of a parent's action under modern practice is that it compensates the parents' *emotional losses* when their child is injured." 150 Ariz. at 232, 722 P.2d at 957, quoting, Note, *The Child's Right to Sue for Loss of A Parent's Love, Care, and Companionship Caused by Tortious Injury to the Parent*, 56 B.U.L.Rev. 722, 731–732 (1976). (Emphasis added.) We do not agree with the parents' conclusion. The note is referring to "emotional losses" from the deprivation of their child's society, companionship, love and support and not the parents' emotional distress caused by observing their child's injuries. In Arizona, an action for mental distress for negligent injuries to another is limited to the witnesses of an accident. See *Keck v. Jackson*, 122 Ariz. 117, 593 P.2d 671 (1978).

*Frank* makes clear what damages are recoverable:

"In conclusion, we believe parents should have a remedy in damages against a negligent tortfeasor whose actions have so severely injured the parents' adult child that they are deprived of their child's society, companionship, love and support—in short, of the child's consortium...." 150 Ariz. at 234, 722 P.2d at 759.

There was no such deprivation here.

Affirmed.

LACAGNINA, C.J., concurs.

HATHAWAY, Judge, dissenting.

I believe that the trial court erred in finding that there could be no recovery for loss of filial consortium in this case on the

basis that the permanent injuries suffered by Tony are not as severe as those suffered by the injured victims in *Reben v. Ely*, 146 Ariz. 309, 705 P.2d 1360 (App. 1985), and *Frank v. Superior Court*, 150 Ariz. 228, 722 P.2d 955 (1986). I do not believe that a child necessarily must suffer severe brain damage, as occurred in those cases, or become a quadraplegic or suffer a designated catastrophic injury in order for the parents to suffer a loss of consortium. In other words, loss of consortium may be partial. The action should not be precluded if the loss is not total. It is the right of every parent to have the society and companionship of a normal child free from injury caused by the wrongful conduct of another. The trier of fact must determine the extent of recovery based on the severity and permanency of the child's injuries and the extent to which the injuries interfere with the normal relationship between parent and child. To reiterate the language of the supreme court in *Frank:* "Why should the parents of an injured seventeen-year-old be allowed to recover for loss of consortium, but not the parents of an injured eighteen-year-old? We can divine no adequate answer based on law or logic...." 150 Ariz. at 234, 722 P.2d at 961.

The same reasoning applies to the question of the extent of the child's injuries. Why should the parents of a brain-damaged child be allowed to recover for loss of consortium, but not the parents of a seriously injured child, albeit less seriously injured? The question is the degree of loss of consortium and the amount of recovery for that loss, and that question is for the trier of fact. Serious injuries encompass a broad range, including injuries causing impairment in varying degrees to the eyesight, hearing, speech, physical mobility and a combination of problems and physical, mental and/or emotional disabilities. How the injuries impact upon a particular filial relationship must be evaluated on a case-by-case basis.

The case note quoted with approval in *Reben* and *Frank* offers guidance for evaluating such claims:

To assure that the claim is for a genuine loss, the court could require the parent or guardian to show a serious injury to the child, *e.g.*, an injury requiring hospitalization for a sufficient period to interfere with the ongoing relationship between parent or guardian and child, or a permanent injury substantially interfering with the child's capacity to interact with his parent or guardian in a normally gratifying way. Expert medical testimony could assist the trier of fact in evaluating the child's injury. The parents or guardian would also be required to show a genuine relationship based on more than consanguinity or legal responsibility, *e.g.*, the existence or expectation of continuing society and companionship before the injury to the child. Here the trier of fact could look at the indicia of parental ties: blood relationship, living in the same household, supplying the necessities of life, making crucial decisions on behalf of the child, and holding oneself out as responsible for the child to the community. The more indicators a plaintiff could show, the greater the likelihood of a genuine relationship.

Simpson, *The Parental Claim for Loss of Society and Companionship Resulting From the Negligent Injury of a Child: A Proposal for Arizona*, 1980 Ariz.St.L.J. 909, 928–29.

The writer noted the strong underlying policy which supports the parents' claim:

[T]he family, as the basic unit of society, performs nurturing and socializing functions essential to raising each new generation—functions which cannot be performed as well, if at all, by any other societal unit. There is a strong policy to encourage and protect parents in performing this nurturing task. The natural and normal reward of parenting is found in this society, companionship, care, and love of children for their parents. The policy of encouraging parents to perform this nurturing function for society is even more important when the task is made more difficult and the rewards fewer because the child is so seriously injured that he lacks the capacity to respond to his parent with normal

care, love, and companionship. The recognition of the parental claim for lost society and companionship of a negligently injured child would not only protect the parental interest in his relationship with his child, it would also protect society's interest in providing nurturing for seriously incapacitated, and therefore not very rewarding, children by clearly indicating that the society and companionship of a child has value and deserves protection. Thus, it appears that a parent who continues to nurture and provide essential caring for a child, without the natural rewards inherent in such a relationship, is even more deserving of recompense for lost society and companionship than the parent whose child has died and requires no more nurturing.

*Id.* at 923–24.

I believe the injuries sustained by Tony impact substantially upon the filial relationship and require damage evaluation by the trier of fact. The demands upon the parents have changed, as have their hopes and expectations and the nature and extent of companionship. Cases from other jurisdictions support this position. In *Dymek v. Nyquist,* 128 Ill.App.3d 859, 83 Ill.Dec. 52, 469 N.E.2d 659 (1984), the court reversed the trial court's dismissal of a claim for loss of consortium where a psychiatrist, at the behest of the mother, attempted to turn a child away from the father in a divorce and custody action. Even in a case where the child's injury was solely a disfiguring facial scar from a dog bite, the parents were permitted to bring an action for loss of consortium. *Korth by Lukas v. American Family Insurance Co.,* 115 Wis.2d 326, 340 N.W.2d 494 (1983). In such a case, the parents' recovery may very well be minimal. The point is that when a child is injured by the negligence of another, the parents have a cause of action for loss of consortium with the extent of their recovery determined by the degree to which the injuries interfere with the parent/child relationship.

The record in this case shows that the trial court relying on *Frank* and *Reben,* denied any recovery for loss of consortium because Tony's injuries were not "practically synonymous with death." This standard trivializes and belittles the important relational interest between parent and child. As Professor Prosser notes:

> An interference with the continuance of the relation, unimpaired, may be redressed by a tort action....
>
> \*      \*      \*      \*      \*      \*
>
> There has been a gradual shift of emphasis ... toward a recognition of more intangible elements in the domestic relations, such as companionship and affection.

W. Prosser and W. Keeton, The Law of Torts 915–16 (5th ed. 1984).

I believe the uniquely harsh standard adopted by the trial court and the majority is unjust. The case should be remanded for consideration of the parents' loss of consortium.