782 P.2d 1162

**James Anthony PIERCE, a single man; and James Pierce and Susan Pierce, husband and wife, Plaintiffs/Appellants,**

**v.**

**CASAS ADOBES BAPTIST CHURCH, an Arizona corporation; and Damon Richard Becker and Peggy S. Becker, husband and wife, Defendants/Appellees.**

**No. CV–88–0410–PR.**

Supreme Court of Arizona,
En Banc.

Oct. 31, 1989.

Dickerson, Butler, Schlievert & Rabb, P.C. by J. Patrick Butler and Vernon F. Dickerson, Tucson, for plaintiffs/appellants.

Bury, Moeller, Humphrey & O'Meara by David C. Bury, Tucson, for defendants/appellees.

Michael J. Valder, P.C. by Phillip D. Ferris and The Langerman Law Offices by Amy G. Langerman, Phoenix, for amicus curiae Arizona Trial Lawyers Ass'n.

GORDON, Chief Justice.

This Court granted plaintiff's petition for review regarding the test that must be satisfied before parents may maintain a cause of action for loss of a child's consortium. We have jurisdiction under Ariz. Const. art. 6 § 5(3), Ariz.R.Civ.App.P. 23, and A.R.S. §§ 12–102 and 12–120.24.

FACTS

On June 15, 1984, James Anthony Pierce (Tony), age 17, was a passenger in the Casas Adobes Baptist Church van when the driver, an agent of the church, accidentally drove off the roadway and overturned the vehicle.

Tony suffered severe injuries in the accident and initially required emergency surgery for internal injuries, including a ruptured spleen and ruptured liver. He also suffered a concussion, a bruised heart and lungs, and his back was broken in two places. During a second surgery, doctors fused his spine from T8 through L5 and permanently inserted two twenty-inch steel rods on either side and parallel to his spine. As a result, he has flat back syndrome and walks with a rigidly straight back with his hips pushed forward. Because of his spinal injury, he suffers bladder and bowel incontinence, limited sexual dysfunction, and must catheterize himself at least four times a day. These conditions are permanent, and may require future hospitalizations. He cannot stoop, squat, bend, sit, or stand for extended periods without discomfort.

Tony's injuries did not confine him to a wheelchair or bed, nor did they affect his ability to communicate and interact with others. Although naturally depressed from the effects of his injuries, Tony finished high school, attended community college, and worked at a variety of jobs. At the time of trial, he lived with his fiancee and worked part-time as a video technician at his father's store.

Clearly devoted to each other, the members of his family provided Tony with countless hours of support and encouragement, particularly after he left the hospital and could not feed, bathe, dress, or clean himself. Throughout the trial, the judge commented on the caring and loving relationships obviously existing in the Pierce family.

Before the accident, Tony enjoyed hunting, fishing, archery, volleyball, and waterskiing. Although limited in his mobility, Tony joined his parents, cousins, and friends on a hunting trip four months after the accident. He also tried waterskiing and volleyball, but could not perform as well as he used to and, fearing further back injury, he gave up those activities. Currently, he participates in an archery league once a week and uses a bow and arrow when hunting.

The trial court denied loss of consortium damages. The court of appeals affirmed, 162 Ariz. 273, 782 P.2d 1166, although Judge Hathaway dissented, arguing that loss of consortium did not require catastrophic injury as a recovery prerequisite.

DISCUSSION

*Case Law Affecting Loss of Consortium in the Parent–Child Relationship*

Loss of filial consortium is a recognized cause of action in Arizona. In *Reben v. Ely*, 146 Ariz. 309, 705 P.2d 1360 (Ct.App. 1985), a ten-year-old child received an accidental dosage of liquid cocaine that caused permanent, irreversible brain damage, reducing the child to a mental age of three with practically no ability to communicate or respond. The court of appeals allowed the parent's claim for loss of the child's consortium, recognizing that only the child's bare existence distinguished the claim from a wrongful death case. *Reben*, 146 Ariz. at 312, 705 P.2d at 1363. In *Howard Frank, M.D., P.C. v. Superior Court*, 150 Ariz. 228, 722 P.2d 955 (1986), this Court recognized the parents' claim for loss of consortium of an adult child when a negligent administration of anesthesia during surgery resulted in permanent and severe brain damage. *Frank*, 150 Ariz. at 228, 722 P.2d at 955. Recently, in *Villare-*

*al v. State, Dept. of Transp.*, 160 Ariz. 474, 774 P.2d 213 (1989), this Court extended the loss of consortium cause of action to include a child's claim for loss of a parent's consortium when the parent suffered overwhelming and severe injuries that destroyed or nearly destroyed the parent-child relationship. *Villareal*, 160 Ariz. at 480, 774 P.2d at 219.

In each of these cases a severe and permanent injury reduced the individual's ability to exchange love, affection, companionship, comfort, care, and society. A number of other jurisdictions have also recognized parents' claims for loss of their child's consortium. In some cases, severe and debilitating injuries destroyed or nearly destroyed the exchange of love, care, and companionship in the parent-child relationship. *See Dearing v. United States*, 835 F.2d 226 (9th Cir.1987) (brain damage); *Shaw v. United States*, 741 F.2d 1202 (9th Cir.1984) (severe brain damage, spastic quadriparesis, blindness, seizure disorder, profound mental and physical retardation); *Yordon v. Savage*, 279 So.2d 844 (Fla.1973) (blindness, incapable of sensation, perception, motor control, or reason); *Hayward v. Yost*, 72 Idaho 415, 242 P.2d 971 (1952) (skull fracture resulting in a deep hole in side of head, residual permanent brain damage, headaches, memory loss, personality changes affecting social relationships, possibility of seizures and partial paralysis); *Harbeson v. Parke–Davis Inc.*, 98 Wash.2d 460, 656 P.2d 483 (1983) (wrongful birth, developmental defects, growth deficiencies, developmental retardation, and other physical defects); *Schockley v. Prier*, 66 Wis.2d 394, 225 N.W.2d 495 (1975) (permanent blindness and disfigurement). In other cases, however, parents' loss of consortium claims were recognized in situations where the injuries did not so severely damage the parent-child relationship. *Dymek v. Nyquist*, 128 Ill.App.3d 859, 83 Ill. Dec. 52, 469 N.E.2d 659 (1984) (unauthorized psychiatric treatment "brainwashed" child and attempted to turn child away from, father); *Korth by Lukas v. American Family Ins. Co.*, 115 Wis.2d 326, 340 N.W.2d 494 (1983) (parents could bring loss

of consortium claim even where child's only injury was a disfiguring facial scar from a dog bite).

### Negligent Infliction of Emotional Distress Distinguished

In the plaintiff's loss of consortium claim, counsel incorrectly included a claim for the emotional distress suffered by Tony's parents after learning of the accident and watching Tony cope with his injuries. Appropriately, these are damages for negligent infliction of emotional distress and not for loss of consortium.

A negligent infliction of emotional distress cause of action requires the plaintiff to: (1) witness an injury to a closely related person, (2) suffer mental anguish manifested as physical injury, and (3) be within the zone of danger so as to be subject to an unreasonable risk of bodily harm created by the defendant. *Villareal*, 160 Ariz. at 481, 774 P.2d at 220; *Gilbreath v. St. Paul Fire & Marine Ins. Co.*, 141 Ariz. 92, 96, 685 P.2d 729, 733 (1984); *Keck v. Jackson*, 122 Ariz. 114, 115–16, 593 P.2d 668, 669–70 (1979). *See generally Prosser & Keeton On The Law of Torts* § 54 at 359 (5th ed.1984). Tony's parents were not within the zone of danger at the time of Tony's injury, and therefore have no cause of action for negligent infliction of emotional distress.

Loss of consortium, on the other hand, is defined as a loss of capacity to exchange love, affection, society, companionship, comfort, care and moral support. *See Reben*, 146 Ariz. at 311, 705 P.2d at 1362; *Frank*, 150 Ariz. at 231, 722 P.2d at 958; Love, *Tortious Interference with the Parent–Child Relationship: Loss of Injured Person's Society and Companionship*, 51 Ind.L.J. 590 (1976); Comment, *Frank v. Superior Court: Purging the Law of Outdated Theories for Loss of Consortium Recovery*, 29 Ariz.L.Rev. 541, n. 2 (1987).

### The Rule

Within the guidelines established in *Reben*, *Frank*, and *Villareal*, we hold that parents[1] may maintain a cause of action for loss of their child's consortium when the child suffers a severe, permanent, and disabling injury that substantially interferes with the child's capacity to interact with his parents in a normally gratifying way. *Villareal*, 160 Ariz. at 480, 774 P.2d at 219. Although evidence of a significant interference in the parent-child relationship must exist, the injury need not be the functional equivalent of death or even be categorized as "catastrophic." Whether the threshold of a significant interference with the normal relationship between parent and child has been met is a question of law for the judge to determine. Once the judge finds that the child's injuries are sufficiently severe to warrant a cause of action for loss of consortium, the trier of fact determines the question of recovery or the amount recoverable based on the degree of that interference.

It appears that the trial court refused this loss of consortium claim because it interpreted *Reben* and *Frank* to preclude recovery in the absence of a vegetative state,[2] not because there was no evidence

---

1. We limit our definition of parents to include biological and adoptive parents. *See Villareal*, 160 Ariz. at 480, 774 P.2d at 219.

2. The court stated:
[T]he court has reviewed *Howard Frank, M.D., P.C. v. Superior Court*, 150 Ariz. 228, 722 P.2d 955. The court feels that it is guided by the language of the court as follows: "In conclusion, we believe parents should have a remedy in damages against a negligent tortfeasor whose actions have so severely injured the parents' adult child that they are deprived of their child's society, companionship, love and support—in short, of the child's consortium."

*Frank v. Superior Court* has in effect announced that loss of consortium for an adult child can be awarded in a case where there are severe injuries. *It would seem that severe injuries means injuries that so incapacitate that there is practically no means of exchange of love, affection, etc.* The *Frank* case and *Reben v. Ely*, 705 P.2d 1360, both involve catastrophic injuries where the loss was practically synonymous with death. In the instant case, the loss of consortium meaning love, companionship, comfort, social relationships, etc., is really not present.
Minute Order, July 17, 1987 (emphasis added).

of interference with the parent-child relationship. Although both *Reben* and *Frank* involved injuries that nearly destroyed the parent-child relationship, this court did not limit loss of consortium claims to such catastrophes.

CONCLUSION

Not all injuries to a child will result in a parent's claim for loss of consortium. We hold that parents may maintain a cause of action for loss of their child's consortium when the child suffers a severe, permanent and disabling injury rendering the child unable to exchange love, affection, care, comfort, companionship and society in a normally gratifying way. Once the threshold of a significant interference with the normal relationship between parent and child is established, it is a question of fact whether, and to what extent, the child's injury justifies recovery.

The trial court apparently concluded that the parent's loss of consortium claim was precluded as a matter of law based on an overly restrictive interpretation of the standard set out in *Reben* and *Frank*. We therefore vacate the court of appeals decision, and reverse and remand this case to the trial court for further proceedings consistent with this opinion.

FELDMAN, V.C.J., and CAMERON and MOELLER, JJ., concur.

HOLOHAN, J., participated in this matter but retired prior to the filing of this opinion.

CORCORAN, J., did not participate in the determination of this matter.