******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

McDONALD, J., dissenting. "It is a [well settled] principle of law that a tortfeasor takes his victim as he finds him. Should the victim be married, it follows that the spouse may suffer personal and compensable . . . injuries" and that those "injuries should not go uncompensated." *Hopson* v. *St. Mary's Hospital*, 176 Conn. 485, 493, 408 A.2d 260 (1979). Should the victim have a minor child, that child may suffer personal, compensable injuries and may recover with a parental consortium cause of action. See *Campos* v. *Coleman*, 319 Conn. 36, 37–38, 44–47, 57, 123 A.3d 854 (2015). Now, faced with a certified question that asks whether this court should recognize a common-law loss of consortium cause of action for parents when their child is injured, the majority dispenses with this court's well settled reasoning by concluding that a loss of filial consortium claim implicates a relational interest not deserving of legal protection. But this court has never relied on distinctions between the relational interests of spouses, parents, and children when determining whether to recognize a loss of consortium cause of action. See, e.g., id., 43–58; *Hopson* v. *St. Mary's Hospital*, supra, 492–96. Instead, we have ordinarily engaged in a policy analysis; see, e.g., *Campos* v. *Coleman*, supra, 40 n.5; which the majority declines to do without explanation. Because I believe that the balance of factors from this court's well settled policy framework supports the recognition of a loss of filial consortium cause of action, I respectfully dissent.

This case comes to us as a certified question from the United States District Court for the District of Connecticut. The plaintiffs Justin Lapointe and Mary Lapointe are seeking to recover damages for the loss of filial consortium of their infant daughter, the plaintiff L. L.[1] They allege that Mary placed L. L. into a car seat,

---

[1] Justin, Mary, L. L.'s aunt, the plaintiff Kayleigh Lapointe, and L. L., through Justin as her next friend, brought this product liability action in the District Court. They brought various claims, including claims alleging violations of

temporarily set L. L. on the kitchen countertop, and inadvertently turned on the electric range, causing L. L.'s car seat to catch fire. L. L. allegedly suffered severe injuries, including burns to her entire body, which resulted in the amputation of fingers on her right hand.

The plaintiffs brought a product liability action in the District Court against the defendants—car seat manufacturer Newell Brands, Inc., car seat retailer Target Stores, Inc., stovetop manufacturer Haier US Appliance Solutions, Inc., and stovetop designer General Electric Company.[2] The plaintiffs alleged that Newell and Target "knew or should have known" that the car seat contained defective components that did not satisfy federal fire safety standards, and that they failed to warn customers about the risk of injury. The plaintiffs also alleged that Haier "knew or should have known" that the stovetop was defective because it lacked safety mechanisms to prevent customers from accidently turning it on, and that Haier had failed to warn customers of that risk. The defendants moved to dismiss, among other things, the plaintiffs' loss of filial consortium claims. The District Court denied, without prejudice, the defendants' motions to dismiss as to those claims and issued an order certifying the following question to this court: "Does Connecticut law recognize a parent's claim for loss of filial consortium in his or her child, who allegedly suffered severe, but nonfatal, injuries because of the defendants' tortious conduct?"

Before this court, the plaintiffs argue that our reasoning in *Campos* v. *Coleman*, supra, 319 Conn. 36, sup-

the Connecticut Product Liability Act, General Statutes § 52-572m et seq., and claims alleging violations of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. Because the loss of consortium claims are the only claims at issue before this court, for simplicity, all references to the plaintiffs are to Justin and Mary.

[2] The claims brought against General Electric Company were all dismissed with prejudice. See *L. L.* v. *Newell Brands*, *Inc.*, Docket No. 3:23-cv-00803-MPS, 2024 WL 245023, *2 (D. Conn. January 23, 2024). For simplicity, we hereinafter refer to Newell, Target, and Haier, collectively, as the defendants.

ports adopting a loss of filial consortium cause of action because *Campos* rooted the loss of parental consortium cause of action in the reciprocal and unique parent-child relationship, not in the loss of parental services. See id., 46–47. The plaintiffs highlight that, although, in *Campos*, this court concluded that "parental consortium consists of both a parent's *services* to his or her children . . . [and] such *intangibles* as the parent's love, care, companionship and guidance"; (emphasis added; internal quotation marks omitted) id., 50; it is "the impairment of [the parent-child] relationship"—not the loss of the parent's services—that is the critical element giving rise to a loss of parental consortium claim. Id., 47. Consequently, the plaintiffs argue, because a parent can also suffer an impaired relationship with their child when a tortfeasor injures their child, this court should recognize a loss of filial consortium claim as the necessary extension of a loss of parental consortium claim. Following *Campos*, the plaintiffs reason, a loss of services should not be necessary to recover under a filial consortium claim. Instead, they argue, a loss of filial consortium claim should compensate parents for " 'purely emotional injuries' " stemming from the tortfeasor's impairment of the parent-child relationship.

The defendants contend that the parent-child relationship is not reciprocal because, although parents are legally obligated to provide services to their minor children, the reverse is not true. Instead, children are uniquely dependent on their parents. Accordingly, the defendants argue that this court should not recognize a loss of filial consortium cause of action because it is not the logical complement to a loss of parental consortium claim. Haier further contends that, if this court were to recognize a filial consortium claim, it would allow for the recovery of intangible losses alone and

would depart from consortium's " 'conceptualistic unity' " of tangible and intangible losses.

I

It is well settled that this court has the "inherent authority, pursuant to the state constitution, to create new causes of action. . . . Moreover, it is beyond dispute that we have the power to recognize new tort causes of action, whether derived from a statutory provision or rooted in the common law." (Internal quotation marks omitted.) *Byrne* v. *Avery Center for Obstetrics & Gynecology, P.C.*, 327 Conn. 540, 554, 175 A.3d 1 (2018). This court has exercised this authority when, among other instances, it adopted a common-law loss of spousal consortium cause of action; *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 496; and a common-law loss of parental consortium cause of action. *Campos* v. *Coleman*, supra, 319 Conn. 57. Accordingly, there can be no question that, in the present case, this court has the authority to recognize a common-law cause of action for the loss of filial consortium.

This court's reasoning in its consortium case law reflects society's evolved understanding of the nature of certain intimate relationships between spouses and between parents and their children. This case law strongly supports recognition of a filial consortium cause of action. See, e.g., *Craig* v. *Driscoll*, 262 Conn. 312, 339, 813 A.2d 1003 (2003) ("[t]he issue of whether to recognize a common-law cause of action . . . is a matter of policy for [this] court to determine based on the changing attitudes and needs of society"). A review of that case law is foundational to my evaluation of the plaintiffs' request that this court recognize a filial consortium cause of action.

In *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 496, this court first recognized a loss of spousal consortium cause of action after previously declining to do

so in *Marri* v. *Stamford Street Railroad Co.*, 84 Conn. 9, 22–24, 78 A. 582 (1911). In *Marri*, this court declined to recognize a loss of spousal consortium cause of action after the legislature enacted chapter 114 of the 1877 Public Acts, commonly called the Married Women's Act, which permitted women to recover for injuries that impaired their capacity to serve their husbands. See id., 21–24. This court reasoned that, because of the Married Women's Act, a woman's right to recover for her lost services now "must be regarded as exclusive . . . ." Id., 23. As a result, if a husband were to recover for loss of spousal consortium, it would derive solely from a loss of his wife's companionship. See id. But this court reasoned that the loss of companionship alone could not serve as the basis for a consortium cause of action. See id., 23–24. Specifically, this court concluded that the loss of a spouse's services constituted the "foundation[al]" element of consortium, without which recovery should not be available. Id. In short, the decision in *Marri* "rested primarily [on] distinctions then drawn between the sentimental and service aspects of claims for loss of consortium." *Hopson* v. *St. Mary's Hospital*, supra, 491.

Approximately seventy years later, in *Hopson*, this court overruled *Marri* and rejected *Marri*'s bifurcated understanding of consortium. See id., 487, 490–93, 496. We adopted the emerging view that consortium is a " 'conceptualistic unity' " and that its traditional elements—the loss of services and intangibles—are inseparable. Id., 492; see also id., 487 (defining intangible aspects of spousal relationship to include "companionship, dependence, reliance, affection, sharing and aid" (internal quotation marks omitted)). Citing *Hitaffer* v. *Argonne Co.*, 183 F.2d 811, 813–14 (D.C. Cir.) (overruled in part on other grounds by *Smither & Co.* v. *Coles*, 242 F.2d 220 (D.C. Cir.), cert. denied, 354 U.S. 914, 77 S. Ct. 1299, 1 L. Ed. 2d 1429 (1957)), cert. denied, 340 U.S.

852, 71 S. Ct. 80, 95 L. Ed. 624 (1950), we emphasized that "*recovery for loss of consortium should [not] depend [on] whether there was a loss of services.*" (Emphasis added.) *Hopson* v. *St. Mary's Hospital,* supra, 176 Conn. 492. Instead, we found persuasive the reasoning in *Hitaffer* that "what [is] significant [is] the injury to the unity of the marital relation." Id. Following *Hopson,* then, a spouse could recover for a loss of spousal consortium regardless of whether the injured spouse had previously provided any services to the consortium spouse. By adopting a unified view of consortium, this court moved beyond *Marri*'s archaic, service-based understanding of consortium that was rooted in the long rejected idea that a husband possessed a *proprietary* interest in his wife's domestic labor. See id., 487–88.

To that end, *Hopson* recognized that consortium would compensate an injured spouse for the loss of specific *relational* interests. See id., 492–94; see also id., 494 (noting that consortium may compensate for "loss of companionship, society, affection, sexual relations [or] moral support"). Accordingly, this court rejected the notion that a loss of consortium is an indirect injury. See id., 493 ("[t]o describe such a loss as indirect is only to evade the issue" (internal quotation marks omitted)). Rather, this court concluded that a loss of consortium—now understood to include the intangible aspects of a relationship—was a "*personal . . .* though not physical" injury that is "a *direct* result of [a] defendant's negligence . . . ." (Emphasis added.) Id. To describe the consortium spouse's injury as indirect would fall back to the idea that a loss of consortium cause of action compensates that spouse only for a loss of services, rather than also for a loss of relational interests.

In *Campos* v. *Coleman,* supra, 319 Conn. 36, this court relied on the same notion that consortium is a

" 'conceptualistic unity' " that compensates for the personal loss of a relational interest when it recognized a cause of action for a loss of parental consortium. Id., 50, 57; see also id., 50 (defining parental consortium to include not only "a parent's services to his or her children," but also "such intangibles as the parent's love, care, companionship and guidance" (internal quotation marks omitted)). Similar to the court's reasoning in *Hopson*, in *Campos*, this court concluded that "familial consortium claims" were compensable in "cases involving *the impairment of* [*the parent-child*] *relationship* . . . ." (Emphasis added.) Id., 47. To be sure, this court was aware of the lingering concern that services might provide a surer foundation for calculating damages in a consortium cause of action than consortium's intangible, relational elements. Nevertheless, we quoted *Hopson* to reiterate that "*courts commit error when they attempt to distinguish between the different elements of* [*this*] *conceptualistic unity . . . .*" (Emphasis added; internal quotation marks omitted.) Id., 50, quoting *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 492. In sum, in both *Hopson* and *Campos*, this court reasoned that a loss of consortium cause of action allows the spouse or child of the injured party to recover when an injury to that spousal or parent-child relationship occurs.

It logically follows from this court's reasoning in *Hopson* and *Campos* that this court should recognize a loss of filial consortium cause of action. When a parent suffers an impaired relationship with their child because a tortfeasor negligently injured the child, the parent should be able to recover for any provable impairment to that relationship—just as a spouse can recover for a loss of spousal consortium, and just as a child can recover for the loss of parental consortium. Because "there is nothing in reason to differentiate the parent's loss of the joy and comfort of his [or her] child

from that suffered by the child"; *Mendillo* v. *Board of Education*, 246 Conn. 456, 485 n.20, 717 A.2d 1177 (1998), overruled in part on other grounds by *Campos* v. *Coleman*, 319 Conn. 36, 123 A.3d 854 (2015); it is entirely arbitrary not to recognize a cause of action for a parent's personal loss of society, companionship, and comfort of their child.

This court has long affirmed that the parent-child relationship is a unique, protected legal relationship. See, e.g., *Campos* v. *Coleman*, supra, 319 Conn. 46–47. Parents have a constitutional "right to family integrity," which includes a parent's interests "in the companionship, care, custody and management of his or her children . . . ." (Citations omitted; internal quotation marks omitted.) *Pamela B.* v. *Ment*, 244 Conn. 296, 310, 709 A.2d 1089 (1998); see also, e.g., *Hepburn* v. *Brill*, 348 Conn. 827, 839, 312 A.3d 1 (2024) ("[t]he essence of parenthood is the companionship of the child and the right to make decisions regarding [that child's welfare]" (internal quotation marks omitted)). We have underscored that parents and children share a "unique emotional attachment . . . ." *Campos* v. *Coleman*, supra, 43. Because "the parent-child relationship is essentially different from other familial relationships," we have recognized that injuries to that relationship are "uniquely harmful . . . ." (Emphasis omitted.) Id., 48. Indeed, it was that recognition that led this court to recognize a loss of parental consortium cause of action. See id., 43–47, 57.

A parent's interests in their child are also substantially the same as the interests protected by loss of spousal and parental consortium causes of action. In *Hopson*, we noted that a party bringing a loss of spousal consortium claim could seek recovery for a "loss of companionship, society, affection . . . and moral support," among other intangible elements of a spousal relationship. *Hopson* v. *St. Mary's Hospital*, supra, 176

Conn. 494. Similarly, in *Campos*, we defined parental consortium to include "the parent's love, care, companionship and guidance . . . ." (Internal quotation marks omitted.) *Campos* v. *Coleman*, supra, 319 Conn. 50. Certainly, a parent can also receive love, companionship, society, affection, and moral support from their child. Accordingly, because this court has already concluded that a child's interests in their parents' love, companionship, and society are protected, we must safeguard a parent's same interests by recognizing a filial consortium cause of action for parents whose minor child is negligently injured by a tortfeasor. See, e.g., *United States* v. *Dempsey*, 635 So. 2d 961, 965 (Fla. 1994) (loss of filial consortium includes "loss of [a child's] companionship, society, love, affection, and solace"); *Gallimore* v. *Children's Hospital Medical Center*, 67 Ohio St. 3d 244, 251, 617 N.E.2d 1052 (1993) (" '[c]onsortium' includes services, society, companionship, comfort, love and solace"). A parent's interests in their child's love, companionship, and society are no less deserving of protection than a child's or spouse's interests in those same intangible aspects of a familial relationship. Cf. *Mendillo* v. *Board of Education*, supra, 246 Conn. 499–500 (*Berdon, J.*, concurring in part and dissenting in part).

The majority declines to recognize a filial consortium cause of action almost entirely on the ground that a child's relationship with their parents is different from a parent's relationship with their child. This reasoning is misguided. I recognize that, in *Campos*, this court identified particular aspects of a minor child's relationship with their parents that are significant—a unique emotional bond, the parents' distinct legal duties to their child, and a child's legal entitlement to their parents' care—but they do not all apply with equal force in a loss of filial consortium context. See *Campos* v. *Coleman*, supra, 319 Conn. 44–47. Although the unique

emotional bond between a parent and child is reciprocal, it is true that a child has no legal duties to their parent, and a parent is not legally dependent on their child or legally entitled to their child's services.

In *Campos*, however, this court did not make legal dependency and reciprocal legal duties required elements of a loss of consortium claim. See id., 45 ("the relationship between a parent and a minor child is the only one of these [nonspousal, familial] relationships that gives rise to legally enforceable rights"). This court emphasized that it was a child's distinct legal relationship with their parents that defines the limits of who could bring a loss of parental consortium claim. See id. That is, this court reasoned that a child could bring a claim for the loss of a parent's consortium, but not for the loss of an aunt's or uncle's consortium, because the parent-child relationship is "unique" in various ways. Id., 44–47. But this court did not make legal dependency a necessary element of a parental consortium cause of action. Notably, in *Campos*, this court never described the parent-child relationship in terms of legal or relational dependence. The majority recognizes this when it notes that the idea of dependence is merely "[i]mplicit . . . ." Making legal and relational dependence a necessary element to recover in connection with a loss of consortium claim—as the majority implies—would risk overruling this court's reasoning in *Campos* and *Hopson* and would fall back on the outdated notion of a parent's or spouse's respective proprietary interest in their child or spouse.

## II

The public policy factors this court has previously identified in *Mendillo* v. *Board of Education*, supra, 246 Conn. 485, also strongly support my conclusion that this court should recognize a cause of action for loss of filial consortium. To determine whether to adopt a

loss of parental consortium cause of action, this court in *Mendillo* inquired whether (1) recognizing "the cause of action would require [the imposition of] arbitrary limitations" on the class of potential plaintiffs, (2) "recognition would impose" an "additional economic burden . . . on the general public," (3) "recognition would yield significant social benefits," (4) recognizing the cause of action would create a "substantial risk of double recovery," and (5) "the weight of judicial authority" supported recognition. Id. In *Campos*, this court analyzed the same public policy considerations before it recognized a cause of action for loss of parental consortium. See *Campos* v. *Coleman*, supra, 319 Conn. 43–57; see also *Mueller* v. *Tepler*, 312 Conn. 631, 633, 656–58, 95 A.3d 1011 (2014) (analyzing public policy factors identified in *Mendillo* when considering whether to extend loss of spousal consortium claim to unmarried same-sex partners).[3]

Without explanation, the majority almost entirely dispenses with this well settled policy analysis. In doing so, the majority principally relies on a single distinction drawn from an indirect implication from this court's previous holdings rather than on a policy analysis. Moreover, the majority explicitly addresses only one policy factor articulated in *Mendillo*—the weight of judicial authority. By focusing on only one policy factor, the majority has inordinately emphasized the policy decisions of other states, such as Texas, while declining to

---

[3] In *Clohessy* v. *Bachelor*, 237 Conn. 31, 675 A.2d 852 (1996), this court reasoned that the first step in determining whether to recognize a common-law cause of action is to determine whether a reasonable person in the defendant's position could foresee the type of harm that would occur. See id., 45. There is no question that harm to a parent is foreseeable when a tortfeasor negligently injures the parent's child. See, e.g., *Campos* v. *Coleman*, supra, 319 Conn. 48 (concluding that loss of parental consortium is "eminently foreseeable" when tortfeasor negligently injures parent). Accordingly, I consider only whether the public policy factors identified in *Mendillo* weigh in favor of recognition.

engage in a thorough policy analysis as it relates to Connecticut. Because I do not think that this is appropriate—at least not without an explanation as to why it is warranted to abandon this court's policy analysis and to rely on the reasoning of other state courts—I consider whether this court should recognize a loss of filial consortium cause of action using the well settled policy framework employed by this court in *Hopson*, *Mendillo*, and *Campos*. First, recognizing a loss of filial consortium cause of action would not create "a practically unlimited class of potential plaintiffs." *Mendillo* v. *Board of Education*, supra, 246 Conn. 485. Far from it. Although a child's sibling, grandparent, aunt, or uncle might suffer harm because of an injury to the child, such relationships between a child's relative and the child do not "present equally strong claims of loss of consortium as [claims] arising from the relationship between a minor child and a parent." (Internal quotation marks omitted.) *Campos* v. *Coleman*, supra, 319 Conn. 44. As we reasoned in *Campos*, the parent-child relationship is unique, and other familial relationships "[arise] *through* the parent-child relationship." (Emphasis in original.) Id. In general, then, a parent will suffer a "uniquely harmful" injury and can present a unique loss of consortium claim when their child is injured. Id., 48. This court's conclusion in *Campos* that a loss of parental consortium cause of action does not lead to limitless liability applies with equal force to a loss of filial consortium cause of action. The parent-child relationship represents a clear limit, as we have already concluded. See id., 44–48; see also *Mendillo* v. *Board of Education*, supra, 513 (*Berdon, J.*, concurring in part and dissenting in part) (reasoning that "[t]he distinction between the interests of children and those of other relatives is rational and easily applied" (internal quotation marks omitted)).

The majority argues that relying on the "concept of dependence" creates "a clear dividing line between

those relationships for which we do and do not recognize a cause of action for loss of consortium . . . ." This argument implies that, if this court were to recognize a loss of filial consortium cause of action, it would open the door to expanding the loss of consortium cause of action to other family members, with no logical end point. And, if that is the case, at some point this court must say "no."

The fear of an ever-expanding loss of consortium cause of action is unfounded. This court has already concluded that the parent-child relationship clearly limits who can bring a loss of consortium cause of action. See *Campos* v. *Coleman*, supra, 319 Conn. 44–48. And the experience of other states shows that the majority's concern is simply overstated. Of the numerous states that have recognized a loss of parental or filial consortium cause of action since Idaho first did in 1952; see *Hayward* v. *Yost*, 72 Idaho 415, 425, 242 P.2d 971 (1952); only New Mexico has allowed for nonparent family members to recover for a loss of consortium. See *Fernandez* v. *Walgreen Hastings Co.*, 126 N.M. 263, 273, 968 P.2d 774 (1998) (requiring child's grandmother to show that she acted as family caretaker and provided parental affection to child to recover for loss of consortium). In the twenty-six years since New Mexico first recognized the cause of action in *Fernandez*, no other state has extended nonspousal, familial consortium causes of action beyond the parent-child relationship. See, e.g., *HELG Administrative Services, LLC* v. *Dept. of Health*, 154 Haw. 228, 229, 234–35, 237, 549 P.3d 313 (2024); *Snearl* v. *Mercer*, 780 So. 2d 563, 591–92 (La. App.), writ denied, 794 So. 2d 800 (La. 2001), and writ denied, 794 So. 2d 801 (La. 2001); *North Pacific Ins. Co.* v. *Stucky*, 377 Mont. 25, 40, 338 P.3d 56 (2014); *Hern* v. *Safeco Ins. Co. of Illinois*, 329 Mont. 347, 361–63, 125 P.3d 597 (2005); *Rolf* v. *Tri State Motor Transit Co.*, 91 Ohio St. 3d 380, 381, 383, 745 N.E.2d 424 (2001);

*Benda* v. *Roman Catholic Bishop of Salt Lake City*, 384 P.3d 207, 209, 212–13 (Utah 2016). If the experience of other states is not persuasive, then the majority need look no further than *Campos* to determine that this court has already identified a logical end point to loss of consortium claims: the parent-child relationship.[4]

As to the second factor, recognizing a cause of action for loss of filial consortium would not impose undue societal costs, such as unreasonable increases in insurance premiums or litigation costs. See *Campos* v. *Coleman*, supra, 319 Conn. 47. To the extent recognizing a loss of filial consortium cause of action would impose undue societal costs, the same costs would certainly have arisen after we adopted loss of parental and spousal consortium causes of action. See id., 47–49, 57; *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 496. In the present case, the defendants have not identified any data to show that this court's prior recognition of consortium causes of action has created undue societal costs in Connecticut. Moreover, other states have recognized a statutory or common-law cause of action for loss of filial consortium for more than three decades, and at least twenty-five states presently recognize such an action.[5] The majority has not identified any undue

---

[4] In the present case, Haier unpersuasively contends that a filial consortium claim would also exclude non-biological parental relationships. But nothing in this court's holding in *Campos* would compel this court to arbitrarily limit recovery to birth parents in a filial consortium cause of action. Rather, a filial consortium cause of action would make recovery available to *legal* parents, which encompasses biological and non-biological adoptive parents.

[5] The following statutes from fifteen jurisdictions allow for a loss of filial consortium cause of action arising out of the wrongful death of, and/or injury to, a child: Alaska Stat. § 09.15.010 (2022) (wrongful death or injury); Idaho Code Ann. § 5-311 (West 2023) (wrongful death only); Iowa Code Ann. § 613.15A (West 2018) (wrongful death or injury); Kan. Stat. Ann. § 60-1904 (1994) (wrongful death only); Ky. Rev. Stat. Ann. § 411.135 (LexisNexis 2005) (wrongful death only); Mass. Ann. Laws c. 231, § 85X (LexisNexis 2009) (serious injury); Neb. Rev. Stat. § 30-810 (2016) (wrongful death only); Okla. Stat. Ann. tit. 12, § 1055 (West 2015) (wrongful death only); Or. Rev. Stat. §§ 30.010 and 30.020 (2023) (wrongful death or injury); R.I. Gen. Laws § 9-

increased societal costs in any of these twenty-five states that would warrant concern by this court.

Although there is no evidence to suggest that recognizing a filial consortium cause of action would impose undue societal costs, as to the third *Mendillo* factor, we do know that such recognition would yield important societal benefits. Allowing compensation for the loss of filial consortium would enable a parent "to secure the therapy that will" help the parent "heal the wounds caused by his or her loss." *Mendillo* v. *Board of Education*, supra, 246 Conn. 479. It would enable a consortium parent to continue to provide care for their injured child. *Campos* v. *Coleman*, supra, 319 Conn. 43 (recognizing parents' care for their children as "critically important [service]"). Furthermore, because the parent-child relationship itself provides "value to society"; id., 46; providing greater protection to this relationship benefits all of society.

Recognizing a filial consortium cause of action would also further the purposes of the tort compensation system. See *Mendillo* v. *Board of Education*, supra, 246 Conn. 482 (identifying purposes of tort system to include "compensation of innocent parties, shifting the

1-41 (c) (2012) (injury); S.D. Codified Laws § 21-5-1 (2004) (wrongful death only); Tenn. Code. Ann. § 20-5-113 (2009) (wrongful death only); Vt. Stat. Ann. tit. 14, § 1492 (b) (Cum. Supp. 2024) (wrongful death only); Va. Code Ann. §§ 8.01-50 and 8.01-52 (2024) (wrongful death only); Wn. Rev. Code Ann. § 4.24.010 (West Cum. Supp. 2025) (wrongful death or injury).

In addition, ten jurisdictions recognize a common-law loss of filial consortium cause of action. See, e.g., *Reben* v. *Ely*, 146 Ariz. 309, 309, 705 P.2d 1360 (App. 1985); *United States* v. *Dempsey*, supra, 635 So. 2d 962–65; *Masaki* v. *General Motors Corp.*, 71 Haw. 1, 19, 22, 780 P.2d 566 (1989); *Snearl* v. *Mercer*, supra, 780 So. 2d 591–92; *Hern* v. *Safeco Ins. Co. of Illinois*, supra, 329 Mont. 361–63; *Fernandez* v. *Walgreen Hastings Co.*, supra, 126 N.M. 271–73; *Hopkins* v. *McBane*, 427 N.W.2d 85, 92 (N.D. 1988); *Gallimore* v. *Children's Hospital Medical Center*, supra, 67 Ohio St. 3d 246, 251–52; *Benda* v. *Roman Catholic Bishop of Salt Lake City*, supra, 384 P.3d 209, 212–13; *Shockley ex rel. Habush* v. *Prier*, 66 Wis. 2d 394, 401–404, 225 N.W.2d 495 (1975).

loss to responsible parties or distributing it among appropriate entities, and deterrence of wrongful conduct"). The cause of action would provide compensation to innocent parents who suffer the loss of their child's consortium. And it would allocate the financial burden of that loss to responsible parties. To the extent the majority is concerned that recognizing a filial consortium cause of action would not further the purposes of the tort compensation system because it would provide no deterrence for wrongful conduct, I would disagree. Even if a filial consortium cause of action would not further deter wrongful conduct—which is doubtful, as there can be no greater incentive for profit-driven companies to create safer products and to avoid exposure to financial lability—it would still further the other purposes of the tort compensation system.

As to the fourth factor, recognizing a cause of action for the loss of filial consortium would also not "create a significant risk of double recovery." Id., 489. "This precise argument was addressed and rejected in *Hopson*." Id., 509 (*Berdon, J.*, concurring in part and dissenting in part). It was again addressed and rejected in *Campos*. See *Campos* v. *Coleman*, supra, 319 Conn. 50–51. In *Campos* and *Hopson*, this court acknowledged that some risk of double recovery may exist. See id.; *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 492–94. The concern was that an injured party might recover for their own injuries and the inability to provide services to their spouse or child. See, e.g., *Campos* v. *Coleman*, supra, 50–51; see also, e.g., *Mendillo* v. *Board of Education*, supra, 246 Conn. 489. In both *Campos* and *Hopson*, however, this court concluded that the risk of double recovery was not an insurmountable barrier to recognizing a loss of spousal or parental consortium cause of action. *Campos* v. *Coleman*, supra, 50–51; *Hopson* v. *St. Mary's Hospital*, supra, 492–94. Instead, this court addressed the risk of double recovery by requiring the

injured party and the consortium spouse or child to join their claims in the same proceeding. *Campos* v. *Coleman*, supra, 50–51; *Hopson* v. *St. Mary's Hospital*, supra, 494. We also required trial courts to instruct juries that an injured party's services are recoverable only by the spouse or the minor child. *Campos* v. *Coleman*, supra, 50–51; *Hopson* v. *St. Mary's Hospital*, supra, 494. This court can and should impose these same requirements in a filial consortium cause of action.

In the present case, Haier argues that recognizing a loss of filial consortium cause of action would create a risk of double recovery distinct from the risk of double recovery that we described in *Campos*. Previously, this court was concerned that an injured parent might recover for their own injuries and the inability to provide services to their child. See, e.g., *Campos* v. *Coleman*, supra, 319 Conn. 50–51; see also, e.g., *Mendillo* v. *Board of Education*, supra, 246 Conn. 489. Haier claims that this court should now be concerned that, in some situations, a risk exists that a party might doubly recover for a loss of *intangible aspects of a relationship* because juries will not be able to distinguish between the different parties' intangible losses. That is, in a situation in which a child and their parent are seriously injured, they might both recover for a loss of consortium. This concern is misplaced.

A loss of filial consortium claim would compensate only for the parent's loss of consortium when their child is injured. See, e.g., *Gallimore* v. *Children's Hospital Medical Center*, supra, 67 Ohio St. 3d 253. A child cannot also recover for their parent's loss of consortium. See, e.g., id. To be clear, both the parent and the child have an interest in their relationship with the other. Accordingly, both the parent and the child could theoretically suffer a compensable injury for a loss of that relationship if both parties are seriously injured. But, in many

situations, either the parent or the child, but not both, will be seriously injured. Moreover, a theoretical risk that might exist in *some* situations should not bar recovery in *all*. There is no reason to think that proper jury instructions and a requirement that parents and children join their claims are inadequate to mitigate any risk that might exist.

To the extent the majority shares the defendants' concern that, even with clear jury instructions, a jury will still make an award that arbitrarily increases a tortfeasor's liability, I am not persuaded. As this court has recognized, "[t]he difficulty [in] assessing damages for loss of consortium is not a proper reason for denying the existence of such a cause of action inasmuch as the logic of [that reasoning] would also hold a jury incompetent to award damages for pain and suffering." (Internal quotation marks omitted.) *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 493. Further, the concern that juries are not able to follow clear instructions runs counter to this court's presumption that, in the absence of evidence to the contrary, juries do follow instructions. See, e.g., *Hurley* v. *Heart Physicians*, *P.C.*, 298 Conn. 371, 402, 3 A.3d 892 (2010). The fear that recognition of another loss of consortium cause of action would increase sympathy awards by juries amounts to a "fear that some cases will be decided badly." (Internal quotation marks omitted.) *Reben* v. *Ely*, 146 Ariz. 309, 313, 705 P.2d 1360 (App. 1985). I believe that it is "better to adopt a rule [that] will enable courts to strive for justice in all cases rather than to rely [on] one [that] will ensure injustice to many." (Internal quotation marks omitted.) Id.

Finally, as to the fifth *Mendillo* factor, recognizing a cause of action for the loss of filial consortium would not run counter to the weight of judicial authority. Twenty-five jurisdictions have recognized a cause of action that allows recovery for the loss of filial consor-

tium.[6] See footnote 5 of this opinion. The reporters' note to comment (b) to § 48 B in the first tentative draft of the Restatement (Third) of Torts explains that "[t]he trend is toward recognition of such claims, with the vast majority occurring after 1987." Restatement (Third), Torts, Concluding Provisions § 48 B, reporters' note to comment (b), p. 303 (Tentative Draft No. 1, 2022). The majority emphasizes that fourteen jurisdictions have declined to recognize a common-law filial consortium cause of action; see footnote 9 of the majority opinion and accompanying text; and that eighteen jurisdictions recognize only a common-law loss of services cause of action. See footnote 10 of the majority opinion and accompanying text. I agree that some of these jurisdictions allow recovery for loss of services but not for loss of relationship. See, e.g., *Smith* v. *Richardson*, 277 Ala. 389, 394, 171 So. 2d 96 (1965); *Earl* v. *Mosler Safe Co.*, 291 Ark. 276, 279, 724 S.W.2d 174 (1987); *Forte* v. *Connerwood Healthcare, Inc.*, 745 N.E.2d 796, 801 n.8, 802–803 (Ind. 2001); *Michaels* v. *Nemethvargo*, 82 Md. App. 294, 296, 298, 300, 571 A.2d 850 (1990); *Father A* v.

---

[6] This number includes the fifteen jurisdictions that allow for a statutory loss of filial consortium cause of action arising out of the wrongful death of, and/or injury to, a child and the ten jurisdictions that allow for a common-law loss of filial consortium claim. See footnote 5 of this opinion. The number also includes jurisdictions that recognize only a wrongful death of a child cause of action but no cause of action for nonfatal injuries to a child. See id. However, there is some conceptual "intersection" between wrongful death claims and the loss of consortium claims. Restatement (Third), Torts, Concluding Provisions § 48 A, comment (g), p. 274 (Tentative Draft No. 1, 2022). Notably, of the states that recognize a common-law loss of filial consortium cause of action, most also recognize a common-law loss of parental consortium cause of action. See, e.g., *Villareal* v. *State, Dept. of Transportation*, 160 Ariz. 474, 477, 774 P.2d 213 (1989); *HELG Administrative Services, LLC* v. *Dept. of Health*, supra, 154 Haw. 229, 234–35, 237; *North Pacific Ins. Co.* v. *Stucky*, supra, 377 Mont. 31–37, 40; *State Farm Mutual Automobile Ins. Co.* v. *Luebbers*, 138 N.M. 289, 299–300, 119 P.3d 169 (App. 2005), writ quashed, 140 N.M. 675, 146 P.3d 810 (2006); *Gallimore* v. *Children's Hospital Medical Center*, supra, 67 Ohio St. 3d 246, 251–52, 254–55; *Theama ex rel. Bichler* v. *Kenosha*, 117 Wis. 2d 508, 522, 527–28, 344 N.W.2d 513 (1984).

*Moran*, 469 N.W.2d 503, 506 (Minn. App. 1991); *Connelly* v. *Omaha*, 284 Neb. 131, 155, 157, 816 N.W.2d 742 (2012); *Gilbert ex rel. Gilbert* v. *Stanton Brewery, Inc.*, 295 N.Y. 270, 272–73, 67 N.E.2d 155 (1946); *Bolkhir* v. *North Carolina State University*, 321 N.C. 706, 713, 365 S.E.2d 898 (1988); *Moses* v. *Akers*, 203 Va. 130, 132, 122 S.E.2d 864 (1961); see also, e.g., *J.V. ex rel. Valdez* v. *Macy's, Inc.*, Docket No. Civ. No. 13-5957 (KSH) (CLW), 2014 WL 4896423, *4 (D.N.J. September 30, 2014) (applying New Jersey law). But this court has recognized a loss of services as one component of a loss of consortium claim. See, e.g., *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 492. Other of these jurisdictions protect a similar interest by recognizing a parent's wrongful death cause of action when their child dies, even though the parent cannot recover when the child is nonfatally injured. See, e.g., Kan. Stat. Ann. § 60-1904 (1994); Ky. Rev. Stat. Ann. § 411.135 (LexisNexis 2005); Neb. Rev. Stat. § 30-810 (2016); S.D. Codified Laws § 21-5-1 (2004).

Regardless of how I might differently categorize or analyze these cases from the majority, this court does "not decide the public policy of this state based [on] the numbers game." *Mendillo* v. *Board of Education*, supra, 246 Conn. 506 (*Berdon, J.*, concurring in part and dissenting in part). Rather, this court must decide whether to recognize a loss of filial consortium cause of action "based [on] what we deem to be in the best interests of justice and of the citizens of [Connecticut] . . . at the time the question is presented to us." (Internal quotation marks omitted.) Id., 506–507 (*Berdon, J.*, concurring in part and dissenting in part), quoting *Hay* v. *Medical Center Hospital of Vermont*, 145 Vt. 533, 545, 496 A.2d 939 (1985). Because the overall balance of the public policy factors weighs in favor of recognition, I would recognize a loss of filial consortium cause of action.

## III

The majority's decision not to engage in a thorough policy analysis also represents a departure from a quintessential function of this court: to determine whether to recognize a common-law cause of action. This court routinely "weigh[s] . . . public policies" to determine if a common-law cause of action exists. *Campos* v. *Coleman*, supra, 319 Conn. 40 n.5; see id. ("[s]ee, e.g., [*Mueller* v. *Tepler*, supra, 312 Conn.] 649–58 (recognizing as matter of public policy that member of same-sex couple who would have been married but for legal bar on such marriages can bring loss of consortium claim); *Craig* v. *Driscoll*, [supra, 262 Conn. 338–40] (recognizing that purveyor who negligently serves liquor to adult patron who, as result of his intoxication, injures another, can be proximate cause of such injuries); *Jaworski* v. *Kiernan*, 241 Conn. 399, 412, 696 A.2d 332 (1997) ('[A]s a matter of policy, it is appropriate to adopt a standard of care imposing on the defendant, a participant in a team contact sport, a legal duty to refrain from reckless or intentional conduct. Proof of mere negligence is insufficient to create liability.'); *Clohessy* v. *Bachelor*, 237 Conn. 31, 49, 675 A.2d 852 (1996) ('[w]e . . . conclude, on the basis of sound public policy and principles of reasonable foreseeability, that a plaintiff should be allowed to recover, within certain limitations, for emotional distress as a result of harm done to a third party')).

To abandon this role is the functional equivalent of ceding this court's inherent authority to the legislature; this court has never deferred to the legislature when determining whether to recognize a common-law loss of consortium cause of action. See, e.g., *Campos* v. *Coleman*, supra, 319 Conn. 37–38, 57 (recognizing parental consortium cause of action); *Mueller* v. *Tepler*, supra, 312 Conn. 633–35, 646, 661 (extending spousal consortium cause of action to nonmarried partners who

would have been married or in civil union when underlying tortious conduct occurred if not for fact that they were barred from doing so); *Hopson* v. *St. Mary's Hospital*, supra, 176 Conn. 494–96 (recognizing loss of spousal consortium cause of action). Even in *Mendillo* v. *Board of Education*, supra, 246 Conn. 456, in which this court declined to recognize a loss of parental consortium cause of action; see id., 461, 495–96; neither the majority opinion nor the concurring and dissenting opinion questioned that this court, not the legislature, should make that determination. See id., 480, 485–87; id., 507 and n.13 (*Berdon, J.*, concurring in part and dissenting in part). Instead, in *Mendillo*, the majority of this court reasoned that it can and should engage in a "special policy inquiry" pursuant to its common-law authority. Id., 480. This court "acknowledge[d] that as in any case that involves the question of whether our public policy, as a matter of common law, should recognize a new cause of action, the ultimate decision comes down to a matter of [judicial] judgment in balancing the competing interests involved." Id., 495. There are many circumstances in which this court has appropriately left to the legislature questions better suited to its judgment and expertise. See, e.g., *Commissioner of Mental Health & Addiction Services* v. *Freedom of Information Commission*, 347 Conn. 675, 707, 299 A.3d 197 (2023). This is not one of those circumstances. To defer to the legislature here would abdicate this court's common-law authority because "[t]he issue of whether to recognize a common-law cause of action in negligence is a matter of policy *for* [*this*] *court* to determine based on the changing attitudes and needs of society." (Emphasis added.) *Craig* v. *Driscoll*, supra, 262 Conn. 339.

Indeed, I have not found a single case in which this court has deferred to the legislature when considering whether to recognize a common-law cause of action.

See generally D. Krisch & M. Taylor, Encyclopedia of Connecticut Causes of Action (2023) pp. 1–139 (listing and describing more than 100 recognized common-law causes of action). Of course, this court has *declined* to recognize many common-law causes of action or to expand existing common-law causes of action. See, e.g., *Cenatiempo* v. *Bank of America, N.A.*, 333 Conn. 769, 806, 219 A.3d 767 (2019); *Sepega* v. *DeLaura*, 326 Conn. 788, 789, 167 A.3d 916 (2017); *Ferri* v. *Powell-Ferri*, 317 Conn. 223, 227–28, 235, 116 A.3d 297 (2015); *Cweklinsky* v. *Mobil Chemical Co.*, 267 Conn. 210, 212–13, 216, 837 A.2d 759 (2004); *Thibodeau* v. *Design Group One Architects, LLC*, 260 Conn. 691, 693–94, 697, 802 A.2d 731 (2002); *Kelley Property Development, Inc.* v. *Lebanon*, 226 Conn. 314, 330–31, 627 A.2d 909 (1993). But it does not change the fact that the decision-making authority rests with this court and not the legislature. We regularly weigh policy considerations and, on that basis, determine whether to recognize a common-law cause of action. That is a quintessential function of this court. The majority's failure to engage in a policy analysis represents a dramatic departure from this court's exercise of its long established common-law authority.

For the foregoing reasons, I respectfully dissent.